332 So.2d 286 (1976)
Fayella Amrine KEEN et al., Plaintiffs-Appellants,
v.
PEL STATE OIL CO., INC., et al., Defendants-Appellees, and
Melton Truck Lines, Inc., Intervenor-Appellant.
No. 12784.
Court of Appeal of Louisiana, Second Circuit.
January 6, 1976.
On Rehearing April 19, 1976.
Writ Denied June 11, 1976.
*287 Hargrove, Guyton, Ramey & Barlow by Thomas J. Wyatt, Shreveport, for plaintiffs-appellants.
Bodenheimer, Jones, Klotz & Simmons by G. M. Bodenheimer, Jr., Shreveport, for intervenor-appellant, Melton Truck Lines, Inc.
Wilkinson, Carmody & Peatross by Arthur R. Carmody, Jr., Shreveport, for Southwestern Electric Power Co., defendant-appellee.
Mayer, Smith & Roberts by Caldwell Roberts, Shreveport, for Pel State Oil Co., Inc. and United States. Fidelity & Guaranty Co., defendants-appellees.
Before BOLIN, HALL, and GLADNEY, JJ.
GLADNEY, Judge.
This suit arises out of a collision which occurred on November 5, 1973 in Shreveport, *288 Louisiana. The tractor-trailer which Kenneth K. Keen was operating was struck by a vehicle driven by defendant Rickey Fountain. Keen's tractor struck an electric utility pole, causing the high voltage lines to fall on it. The truck caught fire and Keen died as a result of burns and/or electric shock.
This action was brought by Fayella Amrine Keen, widow of Kenneth Keen, individually and as tutrix of a minor child of the marriage, three major daughters of that marriage, and Audubon Indemnity Company, subrogee to the extent of property damages paid by it. Named defendants in the original petition were Rickey Fountain; Pel State Oil Company, Inc., Fountain's employer; and United States Fidelity & Guaranty Company, Pel State's insurer. By supplemental and amended petition, Southwestern Electric Power Company was named as an additional defendant. Pel State, United States Fidelity & Guaranty Company and SWEPCO answered in the nature of a general denial. Melton Truck Lines, Inc. intervened to recover amounts allegedly owed as reimbursement for payments made on behalf of the deceased's employer under the Workmen's Compensation Act.
Pel State and United States Fidelity & Guaranty moved for summary judgment contending that Fountain was not acting in the course and scope of his employment at the time of the accident and that, therefore, they were not vicariously liable for his negligence. The trial court granted judgment in favor of those defendants rejecting the demands of the plaintiffs and intervenor. A devolutive appeal was perfected to this court.
The motion for summary judgment was supported by two depositions, one of Sidney Crank, supervisor of Pel State at the time of the accident, and one of Fountain. Pel State and United States Fidelity & Guaranty contend that these depositions show conclusively that Rickey Fountain was not acting "within the course and scope of his employment" at the time of the accident and that they are not vicariously liable for the damage caused by him.
The doctrine of respondeat superior is set forth in LSA-C.C. arts. 176, 2317 and 2320, the latter of which states that:
"Masters and employers are answerable for the damages occasioned by their servants and overseers, in the exercise of functions in which they are employed."
There is no precise rule or definition by which we can determine in every instance whether the employee driver of a motor vehicle is acting within the scope of his employment. Each case must be decided largely on its own facts, keeping in mind the basic idea that the use of the vehicle at the time must have been in the exercise of a function for his employer and for which he was employed. LSA-C.C. art. 2320; Leger v. Southern Farm Bureau Casualty Insurance Company, 251 So.2d 801 (La. App., 3d Cir. 1971); Babineaux v. Lavergne, 321 So.2d 401 (La.App., 3d Cir. 1975).
The depositions reveal that Fountain went to work for Pel State Oil Company, Inc. in September, 1973. After spending one week as a manager-trainee, he was assigned as one of two managers of one of Pel State's retail outlets. Later he was assigned as the sole manager of the station at which he was working at the time of the accident. In the course of his managerial duties he was required to take inventory, keep daily records of gasoline sales and count the receipts. He was responsible for the money received at his outlet.
The depositions establish that it was customary for Crank to come by the station to pick up receipts in the morning and in the afternoon. The morning receipts consisted of the amount received at the station during the night as well as the receipts which *289 had been taken home by Fountain the previous evening, the latter being what remained after Crank's afternoon pickup in excess of that necessary for the night shift to make change. The depositions also indicate Fountain took the money home, possibly at the suggestion of his supervisors, in response to several robberies of the station before Fountain became manager.
The sworn statements establish that Fountain was on a monthly salary and that his hours were not recorded. His usual working hours were from 5 A.M. to 5 P.M. six days a week. He sometimes went to the station to perform his duties on his days off or stayed after his regular hours to complete his bookkeeping.
The accident occurred on Monday morning between 4:30 and 5:00 A.M. November 5, 1973. Fountain had been off on Sunday. He was carrying the receipts he had taken with him on Saturday evening for safekeeping. At the time of the accident he was driving to the station in a car which he was considering buying from one of his father's co-workers. Pel State had no interest in the vehicle. He received no compensation for his time while traveling, nor any allowance for his mileage. The money which Fountain was carrying was not necessary to the continued operation of the station.
The evidence establishes conclusively that Fountain was not hired to transport the receipts from the service stations. The "functions in which he was employed" were the operation and maintenance of the retail outlet of which he was manager. The testimony clearly reveals that supervisor Crank, not Fountain, was charged with the duty of making bank deposits, of transporting the money about town, and delivering the records prepared by Fountain to the business office of Pel State. The use of an automobile by Fountain was not indispensable to the conduct of the employer's business. It must be concluded that the depositions establish beyond all reasonable doubt that in this case there was no genuine issue of material fact.
A motion for summary judgment can only be sustained where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966.
The summary judgment remedy is not a substitute for a trial and may not be resorted to when there is a genuine issue of material fact which must be resolved. Wiltz v. Dixie Auto Sales, Inc., 315 So.2d 811 (La.App., 2d Cir. 1975). In considering a motion for summary judgment, the court is not to determine the merits of any factual issues raised, it is to determine only whether there is a genuine issue of material fact. Wiltz, supra; Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963). The mover bears the burden of convincingly showing the absence of a genuine issue of material fact, the burden being such that all reasonable doubt must be resolved in favor of trial on the merits. Wiltz, supra.
We find that defendants have successfully carried that burden in this case. Since there is no genuine issue of material fact, and upon finding defendants are entitled to judgment as a matter of law, the judgment of the lower court sustaining defendants' motion for summary judgment is affirmed.
Before BOLIN, PRICE, HALL, MARVIN and SMITH, JJ.

ON REHEARING
HALL, Judge.
A rehearing was granted in this case upon the application of plaintiffs-appellants and intervenor-appellant to reconsider our original opinion affirming a summary judgment in favor of defendants-appellees, Pel State Oil Company, Inc., and United States Fidelity & Guaranty Company.
*290 The rehearing was granted because of plaintiffs-appellants' strong argument to the effect that there are genuine issues of material fact involved in this case which were resolved in favor of defendants by the court, which should not attempt to resolve disputed facts in considering a motion for summary judgment. Our careful reconsideration of the record and of our original opinion convinces us that the original opinion is correct, there is no genuine dispute as to material fact, and defendants are entitled to judgment as a matter of law.
Plaintiffs argue that the pleadings and depositions disclose there is a factual dispute as to whether Rickey Fountain was required as a part of the duties and functions of his employment as a station manager with Pel State to transport funds of his employer to and from his home after work hours for safekeeping. Plaintiffs argue that the depositions contain facts which would support a finding by the trier of fact that transportation of the money was a part of the duties and functions of Fountain's employment.
There may be some dispute as to whether Fountain was directly and specifically instructed by his supervisor to take the money home at night for safekeeping. Such factual dispute, however, is not material to a decision in this case. There is no dispute as to a material fact. Accepting the facts as presented, and interpreted by plaintiffs, we nevertheless conclude that defendants are entitled to judgment as a matter of law. Assuming that Fountain was instructed to take the money home for safekeeping, we conclude Fountain's employer is not vicariously liable for injuries caused by Fountain's negligence in driving a vehicle from his home to his place of employment on the morning of the accident.
LSA-C.C. Art. 2320 provides the basis for holding a master vicariously liable for the acts of his servant. The article provides in part as follows:
"Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."
The controlling phrase in the article is ". . . in the exercise of the functions in which they are employed." Dudley v. Surles, et al., 11 So.2d 70 (La. App. 2d Cir. 1942). The nature of liability provided for by the statute causes courts to impose a strict construction upon it. Strawder v. Harrall, 251 So.2d 514 (La. App. 1st Cir. 1971). Liability should not be broadly or liberally imposed on a master or employer for the torts of his servant or employee where the master is not himself at fault. As a result masters are only held liable for physical acts of their servants over whom they have control, as opposed to agents over whose movements a principal has no right to control. Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968). Masters control the movements of their servants when they are performing duties for the master and it is only when this right to control exists that vicarious liability exists. When servants are performing functions of their employment it is as though the master acts through the servant. The master receives the benefits of those acts, and so he must also shoulder the liability for any wrongs committed during the performance of the acts. 33 La.L.Rev. 110, 115.
When a servant, or employee, is performing functions of his employment our jurisprudence terms him as within the course and scope of his employment. Wills v. Correge, 148 So.2d 822 (La.App. 4th Cir. 1963) cert. denied 244 La. 147, 150 So.2d 768. As a general rule an employee is not within the course and scope of his employment when he is traveling to and from work. Rollins v. New York Fire and Marine Underwriters, Inc., 225 So.2d 663 (La.App. 3d Cir. 1969); Wills v. Correge, supra, and cases cited therein; and Whittington, et al. v. Western Union Tel. Co., *291 Inc., 1 So.2d 327 (La.App. 2d Cir. 1941) writ denied. This is true in any case where there are no distinguishing facts causing the employee's trip to and from home to benefit or serve the business of his employer to such an extent as to bring him within the course and scope of his employment and as to give rise to vicarious liability. Rollins v. New York Fire and Marine Underwriters, Inc., supra and Wills v. Correge, supra.
Our courts have dealt on numerous occasions with particular facts regarding trips to and from work and decided whether a particular trip was within the course and scope of the servant's employment. A decision on this issue cannot be reached by mechanically applying any rule. Each case contains particulars distinguishing it from all others, and these particulars must be explored and analyzed before a decision is reached. Leger v. Southern Farm Bureau Casualty Insurance Company, 251 So.2d 801 (La.App. 3d Cir. 1971).
The fact that an employee is wearing a uniform belonging to his employer on the way home does not bring the trip within the course and scope of his employment. Whittington, et al v. Western Union Tel. Co., Inc., supra. Just being in a company car or truck does not give rise to vicarious liability where the employee's trip is personal. Johns v. Hunt Lumber Company, Inc., 250 So.2d 543 (La. App. 2d Cir. 1971). The fact that the vehicle is to be used in the employment does not necessarily bring the trip within the course and scope of employment where the employer does not control the means of transportation to and from a starting point. Romero v. Hogue et al., 77 So.2d 74 (La. App. 1st Cir. 1954) and Hardware Mutual Casualty Co. v. Standard Coffee Co., Inc., 2 So.2d 89 (La.App.Orl.1941) writ denied. The fact that an employee can make it to work faster in a car than by bus or some other means of transportation likewise does not bring the trip within the course and scope of employment. Laird v. Travelers Indemnity Company, 236 So.2d 561 (La. App. 4th Cir. 1970). In Graffagnini et al. v. George Engine Company, Inc., et al., 45 So.2d 412 (La.App.Orl.1950) an employee gave a sick co-employee a ride home and the court held this fact did not bring the employee within the course and scope of his employment during the trip so as to give rise to liability on the employer's part.
On the other hand, some facts lead to a conclusion the trip is a part of the employment. Where an employee is paid for his time and travel or where he carried with him in his vehicle display equipment as a major and necessary part of his job, the trip and the operation of the vehicle have been determined to be within the course and scope of the employment. O'Brien v. Traders and General Insurance Company, 136 So.2d 852 (La.App. 1st Cir. 1961) cert. denied and Wright v. Romano, 279 So.2d 735 (La.App. 1st Cir. 1973) writs refused 281 So.2d 757. Where an employer directs the method of travel, liability is also imposed. McAllister v. Jackson Brewing Company et al., 6 So.2d 179 (La.App.Orl.1942). These cases are illustrative of instances wherein the trip is intimately connected to the performance of the job and the employee is within the course and scope thereof during the trip.
Fountain's basic purpose and mission in driving the vehicle on the morning of the accident was to transport himself from home to work. He only incidentally had with him his employer's money which he had taken home for safekeeping. He would have been making the trip from home to work regardless of whether he had his employer's money with him. Possession of the money and transportation of it to and from the place of employment was a relatively minor and incidental function as related to his primary function of driving to and from worka personal mission. Benefit to the employer was slight. The employer had no control or right of control over the employee's movements in going to and from work. The employer did *292 not specially or separately compensate the employee for his travel time or expenses. The employer did not own or have any other connection with the vehicle being driven by the employee. The driving of the vehicle to work was not a function of Fountain's employment and his employer is not liable for the injuries caused by his negligent driving of the vehicle.
As stated in our original opinion and previously stated in this opinion on rehearing, no precise rule can be stated for determining whether an employee driving a vehicle is acting within the course and scope of his employment and each case must be decided on its own particular facts. The governing general rule is, however, that an employee traveling to and from work is not engaged in a function of his employment. Stated otherwise, an employee is not within the course and scope of his employment and an employer is not vicariously liable to a third person injured by reason of the employee's negligence in driving a vehicle to and from work. This general rule is not altered by the fact that the employee may incidentally have in his possession for purposes of safekeeping some money or other property belonging to the employer.
For the reasons assigned in our original opinion and in this opinion on rehearing, the judgment of the district court sustaining defendant's motion for summary judgment is affirmed and our original judgment to that effect is reinstated.
Affirmed and original judgment reinstated.
BOLIN, J., dissents and assigns written reasons.
BOLIN, Judge (dissenting).
I am reluctant to dissent from such a well written and documented opinion.
The majority on rehearing has correctly stated the only issue is one of law. Having accepted the facts as presented and interpreted by plaintiffs, I think we must remand the case for a trial on the merits. The employee was ordered by his employer not just to safeguard the money, but to take it from the service station to his home and return it the next day. This instruction was for the benefit of the employer and was thus clearly one of the functions for which Fountain was employed (Civil Code Article 2320). The majority reaches the unwarranted conclusion that the duty of transporting the money to and from work was so trivial that it could not be construed as a function of his employment. This is a finding that should be made only after a trial on the merits.
Summary judgments should be rendered with extreme caution so as not to deprive a litigant of his full day in court. While I am aware of the monumental task plaintiffs have in making out their case on the merits, I think they are entitled to this right.
I respectfully dissent.