481 So.2d 592 (1986)
Curtis ROBINSON
v.
F. STRAUSS & SON, INC.
No. 85-C-0802.
Supreme Court of Louisiana.
January 13, 1986.
Girard J. Fernandez, New Orleans, for plaintiff-applicant.
Paul G. Preston, Christovich & Kearney, New Orleans, for defendant-respondent.
DENNIS, Justice.
We granted certiorari because it appeared that the decisions below to deny an employee worker's compensation may have been based on an error of law, viz., that an accident which happens when a truck driver deviates from his prescribed route to pick up his driver's license at home in violation of a company work rule cannot, as a matter of law, arise out of and in the *593 course of his employment. Upon careful review of the record, however, we discovered that the trial court's judgment was based both on this error of law and an independent factual finding that the employee's accident occurred while he was on a personal mission arising out of an amorous relationship and not during a detour to retrieve his driver's license. Accordingly, we affirm on the basis of the factual finding, for which there is warrant in the record, while disapproving the previous courts' erroneous statement of law.
Plaintiff, Curtis Robinson, worked for F. Strauss & Son, Inc., a liquor distributor, as a delivery truck driver. On November 5, 1981 Robinson was assigned to make liquor deliveries in the uptown area of New Orleans where he lived. While making his rounds Robinson stopped near his house on two occasions. The first time, at about 12:00 p.m., he stopped, got out, returned to his truck, and resumed deliveries without incident. But the second time, at about 6:30 p.m., as Robinson approached the area near his house on foot he was wounded by a shotgun blast fired by one of his neighbors. Robinson's injuries resulted in the amputation of one of his legs.
An employee protected by the Louisiana statute is entitled to receive worker's compensation if disabled `by accident arising out of and in the course of his employment.' LSA-R.S. 23:1031. Lisonbee v. Chicago Mill and Lumber Company, 278 So.2d 5 (La.1973). In Kern v. Southport Mill, 174 La. 432, 141 So. 19, 21 (1932), this court stated that, for purposes of the worker's compensation act, (a) "an accident occurs in the course of an employment when it takes place during the time of such employment", and (b) it arises out of the employment when it is "the result of some risk to which the employee is subjected in the course of his employment to which he would not have been subjected had he not been so employed."
Our courts have repeatedly awarded compensation for injuries sustained by employees while away from the place of employment attending to personal needs which are incidental to the employment or which enable the employee to work better. Lisonbee v. Chicago Mill and Lumber Company, supra at 11 (Tate, J., dissenting). See e.g.: Gray v. Broadway, 146 So.2d 282 (La.App.2d Cir.1962) (truckdriver went home to get driver's license); Alexander v. Insurance Co. of Pa., 131 So.2d 558 (La.App.3d Cir.1961) (worker went home to pick up workboots); St. Alexandre v. Texas Co., 28 So.2d 385 (La.App.Orl.1946), certiorari denied (employee left plant to obtain soft drink at stand a short distance away); Rigsby v. John W. Clark Co., 28 So.2d 346 (La.App.1st Cir.1946), certiorari denied (bookkeeper injured when he left work premises to fix hanging charged wire which created danger to others); Clark v. Employers Liability Assur. Corp., 27 So.2d 464 (La.App.1st Cir.1946) (employee injured on way to cafe to eat during workhours, where no eating facilities on premises.) The courts have consistently held that an employee is protected during work hours, despite minor deviations from instructions or place of work, if what he does could reasonably be contemplated as humanly incidental to his service as an employee and does not unreasonably increase the risk of injury. See Malone & Johnson, Louisiana Workmen's Compensation Law and Practice, 13 La.Civ.Law Treat., Sections 163-165 (1980).
In the present case there is ample evidence to support the trial court's finding that the employee's deviation was not reasonably incidental to his service as an employee and that it unreasonably increased his risk of injury. The evidence fairly preponderates in favor of finding that Robinson deviated from his employment to attempt a reconciliation with a neighbor who was jealous over Robinson's attentions toward the woman with whom the neighbor resided.
The record contains evidence of the following: Robinson lived near a residence occupied by Herbert Lee and Mary Ann Pollard. At some time prior to the events herein Pollard had been Robinson's girlfriend. On the night before the shooting *594 Robinson and another unidentified man suggested to Pollard that she engage in sexual intercourse with them. The next morning Lee accosted Robinson at a bus stop and warned him not to "mess with" or "proposition" his woman. As Robinson got on the bus to go to work, Lee yelled "I am going to fix you."
At trial Robinson testified that he returned to his neighborhood for the purpose of retrieving his driver's license. Because he couldn't find the license on his first stop, he said, he returned after his wife got home from work to enlist her aid. Although Robinson had just two deliveries left, he testified he needed his license because his employer might send him out again that evening. Robinson's testimony was corroborated by that of his helper.
The credibility of Robinson and that of his helper were undermined, however, by the other evidence. A New Orleans policeman testified that Robinson's helper stated immediately after the shooting that Robinson had stopped to attempt a reconciliation with Lee after quarreling with him earlier in the day over a woman. Robinson and his helper did not mention the driver's license as an objective of the detour in narrative statements given by them soon after the shooting. On the other hand, in these statements both Robinson and his helper recounted the altercation Robinson had with Lee that day prior to his injury. Robinson in his statement also indicated yet a third reason for the detour. He said that he had stopped to "settle up my money inside my house instead of fooling with it in the truck." In his trial testimony, however, he did not give this reason for stopping at his house, but contended he detoured only for his driver's license. Robinson conceded on cross examination that after the shooting his helper had come to him and asked, "what do you want me to say?" Robinson failed to produce as a witness the co-employee he claimed at trial to have phoned for permission to pick up his driver's license at home. The employer's night warehouse manager contradicted Robinson's contention that he might need his driver's license after regular working hours. The manager testified that the company would never send a driver back out after 7:00 or 7:30 p.m., the approximate time at which Robinson would have finished his delivery route.
The trial court found that Robinson's accident did not arise out of and in the course of his employment both because he did not follow his employer's rule requiring express permission for a detour and because he was engaged in a purely personal mission related to an amorous controversy. We affirm because there is ample evidence to support the finding that the injury was caused by an accident arising solely out of his personal mission and not while on a quest for his driver's license. We disagree with the previous courts' suggestions, however, that the employee's accident could not have arisen out of his employment if he had in fact deviated from his route without express permission to obtain his driver's license.
AFFIRMED.