624 So.2d 465 (1993)
Georgia Mae L. WASHINGTON, Plaintiff-Appellant,
v.
Nathaniel REED, Defendant-Appellee.
No. 25102-CA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1993.
*466 Edward Dixon, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Caldwell Roberts, Jr., and Kimberly Purdy, Shreveport, for defendant-appellee.
Before NORRIS, HIGHTOWER and WILLIAMS, JJ.
NORRIS, Judge.
Georgia Washington brought a wrongful death action against defendants, Nathaniel Reed and First United Methodist Church of Shreveport, Reed's employer, alleging that First Methodist was vicariously liable for Reed's tortious act of killing Ms. Washington's son, Anthony Dwayne Lee. The district court granted First Methodist's motion for summary judgment finding that Reed did not act within the course and scope of his employment and First Methodist did not owe a duty to protect decedent, Lee, from this particular risk of harm. Ms. Washington appeals from that judgment. Upon a careful review of the facts and applicable law, we affirm.

FACTUAL BACKGROUND
Nathaniel Reed was employed by First United Methodist Church of Shreveport as a custodian and groundskeeper. His duties involved yard work and, during the winter season, assisting with seating arrangements and layouts for church activities.
Reed worked five days a week from 8:00 a.m. until 5:00 p.m., some Saturdays, and every other Sunday. On Saturday, October 17, 1987, the date of the accident, Reed was not on duty and did not receive pay for that day. He had worked Monday through Friday and was scheduled to work half a day on Sunday. On Saturday morning, Reed went to wash a friend's car and then went to his mother-in-law's home. When he learned from his mother-in-law that his daughter needed to be picked up, he and his three year old son drove to First Methodist where she was taking ballet lessons.
His daughter was not waiting outside when he arrived so Reed entered the church to retrieve a spool of weed eater line, which he had purchased earlier, but had forgotten to bring home from work on Friday. As Reed exited the Hunter building on Sprague Street, he noticed four teenage boys, among them 14 year old Nathaniel Lee, wrestling and cursing on the steps of Bain Hall, the gymnasium, located across Sprague Street. He also noticed a young lady, presumably being dropped off to attend a pageant in Bain Hall, who appeared afraid to get out of the car because of the boys' behavior.
Reed crossed the street and told the boys to leave. He explained to them that items were found missing, presumably stolen, from the church and if questioned by the police, he would have to tell them about the boys being in the area. An argument ensued and one of the boys, later determined to be Lee, threatened Reed with bodily harm. Reed struck Lee and then summoned for the security guard.
First Methodist hired Southern Research to provide security guards and a supervisor for Southern Research, Victor Rogers, was on patrol that day. Rogers approached the group and Reed asked him to arrest the boys. Rogers refused but did ask the boys to leave the premises. However, before the *467 boys could leave, a fight began. One of the boys removed his belt with a large buckle and handed it to Lee and Reed pulled a small knife from his own belt, although the deposition testimony and Rogers's incident report conflict as to who initiated the fight. Rogers defused the situation and told Lee to go home. Lee stated that they would get Reed when he drove home. Rogers told Reed not to drive past Douglas Street on the way home because it was the direction in which the boys had walked.
Reed ignored the warning, however, and drove west down Sprague Street. Reed saw the boys as he drove past an alley. The boys allegedly threw rocks and bottles which struck the passenger side of Reed's vehicle. Reed reached for his own revolver located between the arm rests and fired it into the air out of the passenger window, allegedly intending to scare the boys; however, the bullet struck and killed Lee.
Georgia Washington's claim against First Methodist asserted it was vicariously liable for Reed's acts because at all times Reed was acting for the benefit of his employer. Washington now contends that Reed felt he had a duty to remove unauthorized persons from church grounds; he had done so in the past and First Methodist could have foreseen such action. She further asserts that genuine issues of material fact exist regarding whether Reed was on duty that day; whether Reed was responsible, at least in part, for security; and finally, the exact location in which the shooting occurred. Therefore, she argues that summary judgment should not have been granted.
First Methodist argues that Reed was not on duty that day; the shooting did not occur on church grounds; he was never authorized to carry a gun; and security was not part of Reed's employment duties. Thus, he was not acting on behalf of First Methodist; no genuine issues of material fact exist and summary judgment is proper.

APPLICABLE LAW
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. The burden of proof is great and is on the mover. Reese v. Tayco Food Store Inc., 602 So.2d 260 (La. App. 2d Cir.1992).
Summary judgment should be used cautiously and any reasonable doubt as to a material issue of fact should be resolved against granting the motion and in favor of a trial on the merits. Only when reasonable minds must inevitably concur will summary judgment be appropriate. Chaisson v. Domingue, 372 So.2d 1225 (La.1979); Yocum v. City of Minden, 566 So.2d 1082 (La.App. 2d Cir.1990).
On a motion for summary judgment, the court first determines whether supporting documents are sufficient to resolve all material factual issues. If insufficient, summary judgment will be denied. If the documents are sufficient, the burden shifts to the opposing party to prove that material facts exist, either by affidavit or otherwise, but the opposing party may no longer rest on the pleadings alone. Sanders v. Hercules Sheet Metal Inc., 385 So.2d 772 (La.1980); Reese v. Tayco Food Store Inc., supra.
A fact is "material" if it potentially assures or precludes recovery, affects litigants' ultimate success or determines the outcome of a legal dispute. Sanders v. City of Blanchard, 438 So.2d 714 (La.App. 2d Cir.1983).
Vicarious liability arises from La.C.C. art. 2320 which states:
"Masters and employers are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed."
In addition, the Louisiana Supreme Court has set forth four factors to determine whether an employee's act falls within the "course and scope of employment." Some or all of the following must be present: the act (1) was primarily employment rooted; (2) reasonably incidental to the performance of employment duties; (3) occurred during work hours; and (4) on the employer's premises. LeBrane v. Lewis, 292 So.2d 216 (La. *468 1974). It is not necessary that all factors be met. There are no magical requirements and each case must be decided on its own merits. Turner v. State, 494 So.2d 1292 (La. App. 2d Cir.1986).
Further, the employee's tortious conduct must be "so closely connected in time, place, and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business." Such conduct is to be distinguished from that "motivated by purely personal considerations entirely extraneous to the employer's interests." LeBrane v. Lewis, 292 So.2d at 218.

DISCUSSION
The central issue is whether Reed acted within the course and scope of his employment. We have analyzed the summary judgment evidence in light of the LeBrane factors. The first two LeBrane factors require a determination of the actual scope of Reed's duties. Reed was acting as security for the church when he asked the boys to leave; yet, Reed himself admitted in his deposition that none of his work involved security. He also stated in his deposition that the church had always hired separate security. R. p. 226.
Washington argues that Reed did have a duty to remove the boys from the church grounds. According to the deposition testimony of Mac Arthur Zackery, another First Methodist employee, he and Reed were instructed by their supervisor at a meeting to watch for "anything amiss" and "if we couldn't handle it any other wayin a way that would avoid trouble, call the police." R. p. 131. Zackery further testified that on Saturday, October 17, he was tending the church grounds because the security guard was watching only the theatre. R. p. 131. Furthermore, Reed stated in his deposition that he had actually asked people to leave the premises on at least three occasions. R. p. 221.
Arguably, Reed's employment duties included watching for and asking loiterers to leave; however, this incident was not closely connected in time, place, or causation to his employment duties. It occurred on Saturday afternoon and Reed had not worked since Friday; it occurred while he was driving away from the church; and finally, he fired his own revolver, in response to the boys pelting his car with bricks and bottles, after he had completed his personal errand and was returning home. There is no summary judgment evidence that First Methodist authorized such behavior on Reed's part or that it was a risk of harm fairly attributable to the church's business. Here, Reed's conduct was apparently motivated by personal considerations, avoiding harm to his children and further damage to his car, which were extraneous to his employer's interest.
We have recognized such personal considerations in the past and have refused to impose liability on an employer for its employee's intentional tort. Scott v. Commercial Union Ins. Co., 415 So.2d 327 (La.App. 2d Cir.1982). Plaintiff, an attorney, visited Columbia Equipment Company to check on repairs to his tractor and to discuss with an employee, Mercer, the employee's wife's arrearages on a mortgage note. They began discussing the note and Mercer struck the plaintiff. We held that Mercer's battery was motivated by purely personal considerations entirely extraneous to his employer's interest.
In certain cases, an employer may be held liable for its employee's act even if that act was not one of his assigned duties. A grocery store was held liable when its employee clocked himself out and committed an aggravated assault outside the store. Wattik v. Lewis Grocer Co., 476 So.2d 444 (La.App. 2d Cir.1985). The employee had been outside earlier, sweeping or blowing the sidewalk, and had instructed the plaintiffs to move their car from the fire lane. We held the store liable for its employee's subsequent assault because he was in the process of performing his duties when the initial argument arose. The ensuing assault was close in time and reasonably incidental to the previous performance of those duties, even though he clocked out first. Id. at 447.
The instant case is distinguishable from Wattik because Reed was clearly not on duty at any time on the day of the incident. In addition, Reed drove to the church on a *469 purely personal mission, completed the mission, and was driving back home when the incident occurred, greatly attenuating his tortious act from his employment.
The act did not occur during Reed's work hours; therefore, the third LeBrane factor does not apply. Reed was not hired to perform security functions; even if he felt he had a duty to watch the premises, he was not on duty that day and thus outside the scope of his employment. Reed stated in his deposition that he was not on duty. He went to the church to pick up his daughter. R. p. 224. Zackery stated that he was on duty, not Reed, on the day in question. R. p. 117. Furthermore, Rogers stated that he did not think Reed was on duty. R. p. 159. The record permits no other conclusion than that Reed was off duty when this shooting occurred.
The conduct of an off-duty employee will not usually bind his employer even if the incident occurred on the employer's premises. Daniels v. Conn, 382 So.2d 945 (La. 1980). Conn, an electrician for Pinecrest State School, was returning after working hours to his employer-furnished home on school grounds and struck Daniels. The court found that Conn was not on duty the night of the accident and refused to hold Pinecrest liable. Id. at 949.
Daniels is representative of many cases in which an employee driving home from work negligently injured someone; in such a case, the accident is generally found to be outside the course and scope of employment. As a general rule, an employee driving to and from work is not deemed within the course and scope of his employment. Keen v. Pel State Oil Co., 332 So.2d 286 (La.App. 2d Cir.1976), writ denied, 333 So.2d 234. Certainly an employee, who visits his employer's premises to complete a personal errand on his day off, and is driving away from the premises when the incident occurs, should not be deemed within the course and scope of his employment as a general rule.
Washington argues that Reed was on duty that day because he was wearing his uniform. Considering the overwhelming evidence to the contrary, the uniform alone is insufficient proof that he was on duty. In addition, we have held that an employee wearing his employment uniform does not bring the trip within the course and scope of his employment. Id. at 291. Although this rule has been cited in the context of off-duty employees who are driving away from their place of employment after work hours, it is equally applicable here where Reed had not worked the day of the incident. Reed's tortious conduct is even farther removed from the working hours than in Daniels or Keen. Thus, the sole fact that Reed was dressed in his employment uniform does not create a material issue of fact under the evidence presented.
Finally, the fourth LeBrane factor is not met because the act did not occur on church premises. Reed had driven off the church premises and, contrary to the security guard's advice, gone in the direction that Lee and his companions took. While Washington contests the judge's statement of fact that the incident occurred "several blocks" from the church, she concedes that it was in fact off the church premises. She argues that the incident occurred only 30 yards from the church. However, in either case, the act occurred some distance from the church premises. Moreover, the exact distance from the church where the event took place is not a material issue of fact.
The district court in its Opinion on Motion for Summary Judgment stated, "to conclude that Reed was acting within the course and scope of his employment when he shot Lee would stretch the term course and scope of employment far beyond its limits." We are constrained to agree that based on the summary judgment evidence presented, this shooting was outside the course and scope of Reed's employment.
The district court also analyzed the case under duty-risk and reached the same result. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). The court determined that the particular risk here, that a custodian would take the initiative, while off duty, to keep an eye on his employer's premises and subsequently shoot someone after both left *470 the premises, is outside the scope of First Methodist's duty. This is not error.
The latest Supreme Court pronouncement regarding duty-risk is found in Roberts v. Benoit, 605 So.2d 1032 (La.1992). In Roberts, the court refused to hold the sheriff vicariously liable when his employee left work, consumed alcohol, played with his gun, and accidentally discharged it, injuring someone. The court reached this result even though Benoit had received firearm training and was instructed that it was better to carry a gun off duty. The sheriff, however, had neither authorized Benoit to carry a weapon, nor provided it; and Benoit was in fact a cook who was deputized in name only. The court considered the risk to be a "far-flung hazard" and refused to impose such a duty under these circumstances.
Similarly, First Methodist's duty to Lee does not encompass the risk that its off-duty custodian, who is on the church premises for personal reasons, would assume the responsibility of asking Lee and his friends to leave the premises, and then, while driving away from the church, respond to a brick thrown at his car by firing his personal handgun, ultimately killing Lee. First Methodist could not have expected this harm to result from asking its on-duty employees to watch the premises and call security or police if something was amiss. Thus, First Methodist is not vicariously liable under duty-risk.
Accordingly, the district court's judgment granting First Methodist's motion for summary judgment is affirmed. Costs are assessed to Ms. Washington in accordance with La.C.C.P. art. 5188.
AFFIRMED.