675 So.2d 287 (1996)
Michael TIMMONS & Wanda Timmons, Plaintiffs-Appellants,
v.
Stacie Michelle SILMAN, State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company, Defendants-Appellees.
No. 28139-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1996.
Rehearing Denied June 20, 1996.
*288 Guerriero & Guerriero, Joe D. Guerriero, for Plaintiffs-Appellants.
Hudson, Potts & Bernstein, Jan Peter Christiansen, for Defendant-Appellee, State Farm Fire & Casualty Insurance Company.
J. Bachman Lee, for Defendants-Appellees, Stacie M. Silman and State Farm Insurance Company.
Before MARVIN, HIGHTOWER and GASKINS, JJ.
HIGHTOWER, Judge.
In this action arising out of an automobile accident, plaintiffs appeal a summary judgment implictly finding that the defendant driver had not been in the course and scope of her employment at the time of the incident. We affirm.

FACTS AND PROCEDURE
On December 22, 1993, after receiving a bonus check during a holiday luncheon and returning to the law office where she worked as a clerical assistant, Stacie Michelle Silman again departed in order to replenish her employer's postage meter. In accomplishing this task, she drove her personal automobile, as she did almost every day, to the post office located approximately six blocks south of her place of employment in Monroe. Eventually, before returning to the law office, Silman decided to cash her bonus check at a branch bank where she regularly made deposits for her employer as part of her job. In route to that institution located about eighteen blocks northeast of the law office, however, she became involved in a vehicular accident with plaintiff, Michael Timmons.
As a result of the accident, Timmons and his wife filed the present suit against Silman, her automobile liability insurer, and her employer's liability insurer, State Farm Fire & Casualty Insurance Co. Thereafter, maintaining Silman had not been in the course and scope of her employment at the time of the accident, State Farm moved for summary judgment. According to the motion, the employee had been on a personal errand to cash her check after deviating from her work-related post office task. The trial court, upon subsequently finding the requested relief appropriate, dismissed State Farm from the litigation. This appeal by plaintiffs ensued.

DISCUSSION
An employer is answerable for the damages caused by his employee if, at the time the tort is committed, the servant is acting within the scope of his employment, i.e., in the exercise of the functions in which employed. La.C.C. Art. 2320. To find conduct within the course and scope of employment, some or all of the following must be present: the act (1) had been primarily employment rooted; (2) reasonably incidental to the performance of employment duties; (3) occurred during work hours; and (4) happened on the employer's premises. Washington v. Reed, 624 So.2d 465 (La.App.2d Cir.1993), and authorities therein. Even so, there being no hard and fast rule in making that determination, each case must be decided on its own merits and particulars. Washington, supra; Keen v. Pel State Oil Co., Inc., 332 So.2d 286 (La.App.2d Cir.1976), writ denied, 333 So.2d 234 (La.1976); Wright v. Romano, 279 So.2d 735 (La.App. 1st Cir. 1973), writ denied, 281 So.2d 757 (La.1973). But before vicarious liability can arise from Article 2320, the employee's tortious conduct must be so closely connected in time, place, and causation to his employment duties as to constitute a risk of harm attributable to the employer's business. Orgeron v. McDonald, 93-1353 (La. 07/05/94), 639 So.2d 224. Very importantly, such conduct is to be distinguished from that motivated by purely personal considerations entirely extraneous to the employer's interests. Washington, supra.
Analyzing the present case with these considerations in mind, we agree with the trial court that Silman was no longer in the course and scope of her employer's business when she had the accident with Michael Timmons. Although she initially started out to *289 get the postage meter replenished, she clearly made a major deviation from that task when she decided to travel some eighteen blocks in the opposite direction to cash her check at the bank. Indeed, her new objective required that she pass within a block or two of her place of employment before heading toward the branch bank location where she intended to engage in her personal transaction. In terms of "time, place, and causation," Orgeron, supra, at 227, this undertaking exceeded a mere minor digression from the work errand such that the harm resulting from her involvement in the automobile collision cannot be termed "attributable to [her] employer's business," Id. What is more, upon reviewing the Washington factors, the only consideration favoring vicarious liability is that the misadventure took place during working hours.
Thus, notwithstanding that the postal mission initiated Silman's trip and the meter thereafter continued in her possession, she was not about her employer's business when the accident occurred. The distance and time required for the journey to a bank in another section of town, and in a direction away from both the law office and post office, clearly turned the later portion of the excursion into a purely personal matter entirely extraneous to the employer's interests. But for that private purpose, the extended travel would not have been made. Thus, the law office work became merely incidental once Silman abandoned her assigned task by driving past her place of employment to cash the check. Cf. Pearce v. U.S. Fidelity & Guaranty Co., 8 So.2d 743 (La.App.2d Cir.1942). In this instance, we are not confronted with a slight departure from a route normally traveled to complete work, but, instead, with an excursion entailing a distance three times farther than originally contemplated.[1]
Nor are we greatly impressed that the branch bank involved is the location where Silman usually made her employer's business deposits. It is undisputed that she had not been engaged in that activity when the accident occurred and, insofar as law office matters, had absolutely nothing to accomplish at the bank on the date in question. Thus, her employer received no benefit from the extended trek to the financial institution. See Keen, supra.
In sum, we find ample undisputed evidence in the present record that Silman's deviation from her employer's mission had not been reasonably incidental to her service as an employee and that it unreasonably increased the risk attributable to her original errand. Cf. Graffagnini v. George Engine Co., Inc., 45 So.2d 412 (La.App.Orl.1950). Thus, the trial court correctly found that Silman had not been in the course and scope of her employment and that her employer is not vicariously liable for plaintiffs' damages.

CONCLUSION
For these reasons, the summary judgment granted by the district court in favor of State Farm Fire & Casualty Insurance Company is affirmed. Costs of the appeal are assessed against plaintiffs.
AFFIRMED.
MARVIN, C.J., dissents for reasons assigned.
MARVIN, dissenting.
I respectfully dissent to the affirmance of the summary judgment effectively decreeing, as a matter of law, that Ms. Silman, the law office employee who deviated from her employer's mission, was not within the course of her employment when the accident occurred.
An employee's deviation from a mission for the employer to attend to purely personal business does not, in every circumstance, as a matter of law, compel the conclusion that the deviation removes the employee from the course of employment, whether for the employer's exposure to workers' compensation liability or to vicarious liability to a third party who suffers harm because of the employee's negligence.
*290 Otherwise, the "troublesome problems," as the Malone-Johnson treatise labels the employee deviation cases, would be easily resolved and not at all troublesome to the courts. The mere finding of an employee deviation for a personal reason would resolve the issue. See the Louisiana authority on the matter, Malone & Johnson, Workers' Compensation Law and Practice, 13 Louisiana Civil Law Treatise (3d ed.1994), § 174. I agree with that authority's quote from Professor Larson's hornbook: "[C]ourts now recognize, as to such deviations, that `human beings do not run on tracks like trolley cars.'" Malone-Johnson, § 174, fn. 1, p. 405. Emphasis supplied.
More than 50 years ago this court, quoting Blashfield, said:
The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work is merely incidental to the travel, and the trip would not have been made but for the private purpose of the servant, he is out of the scope of his employment in making it.

Pearce v. United States Fidelity & Guaranty Co., 8 So.2d 743, 748 (La. App.2d Cir.1942). Emphasis supplied.
Citing Restatement sections and writing for a unanimous court more than 20 years ago, Justice Tate reasoned similarly on an employer's vicarious liability issue arising out of an employee's intentional tort. The employee's tortious conduct (stabbing a fired employee in a personal dispute) was said to be "partly actuated by ... and reasonably consequent upon or incident to his employment." LeBrane v. Lewis, 292 So.2d 216, 219 (La.1974).
In this decade, the supreme court set forth the proper analysis and principles for determining when the employer's vicarious tort liability for a deviating employee's negligent conduct would arise:
Because vicarious liability is imposed based upon the attribution of business-related risks to the enterprise, specific conduct may be considered within the scope of employment even though it is done in part to serve the purposes of the servant ... The fact that the predominant motive of the servant is to benefit himself ... does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service. So also, the act may be found to be in the service if not only the manner of acting but the act itself is done largely for the servant's purposes....
In contrast to ... intentional tort cases, in which it must be determined whether the tortious act itself was within the scope of the servant's employment, the court in a negligence case need only determine whether the servant's general activities at the time of the tort were within the scope of his employment.

Ermert v. Hartford Insurance Co., 559 So.2d 467 (La.1990), at pp. 476-478. Citations omitted; emphasis supplied.
An employee's deviation from his or her work instructions or location during working hours, to attend to personal needs which are incidental to the employment, will not defeat the employee's claim for compensation as a matter of law. See Robinson v. F. Strauss & Son, Inc., 481 So.2d 592 (La.1986), and authorities cited therein at p. 593. In such circumstances, the pivotal factual inquiry is into the general activities of the employee and is not simply into whether a deviation occurred. The court must consider the risk to which the employer exposes himself when an employee undertakes a general mission for the employer, and the relation between the duration and distance factors of the employer's mission, on the one hand, and the manner in which the employee engaged in the personal deviation mission, on the other. Ermert; Robinson, supra.
In Robinson, the claimant truck driver was shot by a neighbor with a shotgun when the claimant left his prescribed route and went home during working hours, in violation of a company work rule. The reason for the deviation conflicted: Robinson said he went home to get his driver's license before completing *291 his work deliveries, but other more convincing evidence showed that Robinson went home solely to try to settle a personal dispute with a neighbor over Robinson's recent sexual overtures to the neighbor's girlfriend. The trial and appellate courts ruled in favor of Robinson's employer, denying Robinson's claim for w.c. benefits. The supreme court affirmed
because there is ample evidence to support the finding that [Robinson's] injury was caused by an accident arising solely out of his personal mission and not while on a quest for his driver's license. We disagree with the previous courts' suggestions, however, that the employee's accident could not have arisen out of his employment... as a matter of law ... [even] if he had in fact deviated from his route without [his employer's] express permission to obtain his driver's license.

481 So.2d at 592, 594. Emphasis and brackets supplied.
The underlying rationale common to the authorities above discussed is that the employee who has deviated from his or her employment duties for a personal errand will not be deemed to be outside the course or scope of the employment, as a matter of law, because of the deviation. If the employee's general activities at the time of the alleged tort are found to be reasonably incidental to the employer's mission, even though the deviation was purely personal and extraneous to the employer's mission, the employee will be within the course of her employment.
The documents for and against summary judgment, in my opinion, do not support the majority statement that Ms. Silman "abandoned her assigned task" of servicing the postage meter and returning to the law office when she deviated toward her employer's bank to cash the Christmas bonus check given her by her employer. Her trip to her employer's bank to cash the employer's check payable to her, unlike Robinson's trip, was neither forbidden nor, under the circumstances, unforeseeable. Ms. Silman's route of travel on an employment mission was not dictated or prescribed by her employer. Not having a personal bank account in Monroe where she worked or in West Monroe where she lived, Ms. Silman often cashed her payroll check at her employer's bank where she did business for her employer and was known by the bank employees.
Moreover and to use the majority's expression, I am "not greatly impressed" that the location of the employer's bank "unreasonably increased the risk" of an accident. Ms. Silman routinely drove her car to that very bank to attend to her employer's banking business.
The circumstances revealed in the documents for and against summary judgment lead me to conclude that this case is typical of the triangular deviation cases mentioned in Malone-Johnson:
... [An employee] may take what Larson has called the "triangular deviation," in which he takes a less-than-direct route to the employment mission to accomplish the personal objective.

If the dominant purpose of a trip (even in the employee's own vehicle) is rooted in the employment, it would not be wholly illogical to conclude that even injuries on a more circuitous route would still be in the course of employment, since no two employees could be expected to choose an identical route for the same trip....
Malone-Johnson, § 174 at p. 406. Footnote omitted; emphasis supplied.
During the routine mission to service the postage meter and return to the office, Ms. Silman decided to cash her Christmas bonus check, given her by her employer during lunch that day. Ms. Silman was paid biweekly, and had received her regular paycheck two days before, on Monday, December 20. She was not scheduled to receive another regular paycheck until January 3, 1994, after the Christmas-New Year's holiday. The employer's office, the post office and the bank which served the employer, triangularly are relatively close, the longest leg being 24 city blocks northeast from the post office which is about six blocks southerly from the law office. The time and distance factors in Ms. Silman's deviation are not legally escalated in these circumstances. The "three-times the distance" rule emphasized by the majority *292 would be meaningless if the post office was one block away and the bank was three blocks away from the employer's office.
The risk that Ms. Silman might be involved in an automobile accident within a radius of 24 city blocks, going from or to the law office, is an obvious risk accepted by her employer who had assigned to her the routine, periodic, responsibilities within that radius of receiving and sending office mail and making deposits in the employer's bank account.
Ms. Silman's routine work duties included making daily trips to the post office, and making periodic deposits for her employer at the same bank where she intended to cash her bonus check on the day of the accident, without her employer ordering her at a specific time to undertake a specific mission to either specific place. Ordinarily, Ms. Silman would not leave work during office hours "just to cash [her payroll] check," but she often cashed her payroll check while at the bank to make deposits in her employer's account.
Notwithstanding that Ms. Silman had no office banking to do on the day of the accident, "the dominant purpose of [Ms. Silman's] trip [from and to the office] (even in her own vehicle) is rooted in the employment [servicing the postage meter and returning it to use in the office]." Malone-Johnson, supra; brackets supplied. Under these circumstances, it is not "wholly illogical to conclude that even injuries on a more circuitous route would still be in the course of employment, since no two employees could be expected to choose an identical route ..." Malone-Johnson, supra; emphasis supplied. As in Pearce, supra, it is immaterial that Ms. Silman joined with her mission for the employer, her private mission, involving relatively little time and distance, to her employer's bank to cash the Christmas bonus check given her by her employer.
As I appreciate the analysis employed or explained in the mentioned authorities, the inquiry in a negligence case is not whether a specific and measurable deviation for personal reasons occurred, but rather, whether the employee's general activities at the time were work related.
From a policy standpoint, it does not seem either illogical, strained or unreasonable, in my view, to expose her employer to vicarious liability for Ms. Silman's allegedly negligent driving at the time and place of this accident. Both Ms. Silman and her employer impliedly accepted the risk that Ms. Silman might be involved in an automobile accident while driving her own car for her employer within a reasonable radius of the law office that extends to the employer's bank. Again I suggest that the dominant purpose of Ms. Silman's mission was to service the office postage meter and return it to the office for use on the day of the accident. Whether an accident occurred going to or coming from either or both the post office and the bank is of no moment.
On the documents offered for and against the summary judgment, I conclude that the trial court erred in finding, as a matter of law, that Ms. Silman was not acting within the course and scope of her employment at the time of the accident. I would reverse the summary judgment dismissing the employer's liability insurer from the action and would remand for further proceedings.
APPLICATION FOR REHEARING
Before MARVIN, SEXTON, HIGHTOWER, GASKINS and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] The record discloses that the bank where Silman intended to cash her check had another branch almost directly on her path between the post office and her workplace. Obviously, had she gone to the closer establishment, a stronger case could be made that her trip represented only a minor deviation.