| .PEATROSS, Judge.
Plaintiff, Rose Searcy, appeals the judgment of the Workers’ Compensation Judge (“WCJ”) dismissing her claim against her employer, Shoney’s Restaurant (“Sho-ney’s”), for workers’ compensation benefits and medical expenses. For the reasons stated herein, we affirm.
FACTS AND PROCEDURAL HISTORY
In the early morning hours of April 3, 1997, at approximately 1:45 a.m., Plaintiff, who was riding as a guest passenger in an automobile owned and driven by a co-employee, Mr. Stuart Forwood, was involved in a single-car accident on U.S. Highway 190 in West Baton Rouge Parish. As a result of this accident, Plaintiff sustained severe injuries.
At the time of the accident, Plaintiff was the general manager of Shoney’s Restaurant No. 1195, located in West Monroe. She had been promoted to this position from the position of dining room manager of Shoney’s Restaurant No. 1185 in Monroe, a position she held for approximately six years. Mr. Forwood was the general manager of Shoney’s Restaurant No. 1185 in Monroe and had previously been Plaintiffs supervisor.
On April 2, 1997, Plaintiff and Mr. For-wood attended a mandatory business meeting on behalf of Shoney’s in Baton Rouge. According to Plaintiff, the meeting was a “show and tell” regarding upcoming Shoney’s promotions. Shoney’s general managers and area directors attended the meeting. Both Plaintiff and Mr. Forwood were being paid for the trip, i.e., they were “on the clock” according to Plaintiff; and Mr. Forwood’s mileage for the trip was being paid by Shoney’s.
Despite the fact that the meeting ended at about 4:00 p.m., Mr. Forwood and Plaintiff remained in Baton Rouge. Plaintiff had previously arranged to meet Ms. Michelle Weeks, another Shoney’s employee, for dinner while she was in | PBaton Rouge. After the meeting, Plaintiff contacted Ms. Weeks and they agreed to meet for dinner at Chili’s Restaurant in Baton Rouge. Plaintiff and Ms. Weeks had spoken on the telephone numerous times for business purposes and had developed a friendly rapport, but had never met. In the days immediately preceding the Baton Rouge meeting, they discussed the opportunity to finally meet in person under social circumstances and had agreed to do so after the meeting.
Although the group met at Chili’s for dinner, only Ms. Weeks and Mr. Forwood actually ate dinner. Plaintiff testified that *308 she had two glasses of wine, but did not order her own meal, choosing instead to eat intermittently from Mr. Forwood’s plate. After dinner, the trio went to three separate bars for drinks and dancing, Glen’s, Triple A and The Texas Club. All three consumed alcohol during the course of the evening.[1]
Plaintiff and Mr. Forwood left Baton Rouge at approximately 1:30 a.m. on April 3, 1997, despite Ms. Weeks’ attempts to persuade them to remain in Baton Rouge due to the late hour. Plaintiff testified that she informed Mr. Forwood that she had been awake since 3:30 a.m. the previous day and would not be able to assist him in driving or in staying awake. Ms. Weeks also testified that Plaintiff stated she was too intoxicated to help Mr. For-wood drive or stay awake. Soon after beginning the trip, Mr. Forwood fell asleep while driving and his car struck a median rail, became airborne and rolled counterclockwise onto its top, coming to rest in the left eastbound lane of U.S. Highway 190. Although Mr. Forwood sustained minor injuries, Plaintiff suffered serious injuries as a result of the accident.[2] She returned to her former position with Sho-ney’s in January 1998 and, |3in April 1998, brought this workers’ compensation suit, claiming that her injuries are compensable under the Louisiana Workers’ Compensation Act.
After Plaintiff filed her claim, Shoney’s filed a motion for summary judgment on the ground that Plaintiff could not demonstrate that the accident arose out of her employment and that she was in the course and scope of her employment at the time of the accident. Plaintiff subsequently filed a Motion for Partial Summary Judgment on the same issue in opposition to Shoney’s motion. On January 12, 1999, after a hearing on the parties’ motions, the WCJ granted Shoney’s Motion for Summary Judgment and dismissed Plaintiffs claim. The WCJ stated in her oral reasons for judgment:
The first thing that the Court finds is that the parties were in the course and scope of their employment when they went down to Baton Rouge for a meeting and that meeting was to further the business at Shoney’s.... The Court finds that from the time they left that meeting, during the visit at Chili’s Restaurant ... and during that visit at the bar establishments there was in fact a deviation from employment ... [ Plaintiff ’s] deposition testimony indicates to me that she actively engaged in the deviation ... Because of that deviation, I find that it was not— that the deviation was not reasonably incidental to then-service to Shoney’s. I also find that it unreasonably increased their risk of injury ... Evidence indicates that a lot of what happened was out of the control of [Plaintiff], but the Court does not feel that it can hold Shoney’s responsible for the negligent acts of Mr. Forwood ... Although they may have re-entered their employment when they got back on the highway coming to Monroe, the fact that they had engaged in activity that contributed to that accident made it unreasonably— it unreasonably increased the risk of injury. Therefore, I cannot find that they were involved or in the course and scope of their employment at the time of the accident. I think that seven hours on a personal endeavor made the deviation so great that I cannot hold Shoney’s responsible for the negligent activities of Mr. Forwood which resulting (sic) in the injury to [Plaintiff].
This appeal ensued.
DISCUSSION

Summary Judgment

Summary judgment procedure is designed to secure the just, speedy and inex *309 pensive determination of every action allowed by law. The judgment sought 1¿shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Banks v. State Farm Ins. Co., 30,868 (La.App.2d Cir.8/19/98), 717 So.2d 687.
The mover has the burden of establishing an absence of a genuine issue of material fact. A fact is material if its existence or non-existence may be essential to the plaintiffs cause of action under the applicable theory of recovery. Banks, supra; Curtis v. Curtis, 28,698 (La.App.2d Cir.9/25/96), 680 So.2d 1327. Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Taylor v. Rowell, 98-CC-2865 (La.5/18/99), 736 So.2d 812; Banks, supra; Barron v. Webb, 29,707 (La.App.2d Cir.8/20/97), 698 So.2d 727.

Arising out of and in the Course and Scope of Employment

In order for an injured employee to recover under the Workers’ Compensation Act, it must be proven by a preponderance of the evidence that she has received a “personal injury” by accident arising out of and in the course of her employment. La. R.S. 23:1031; Hoy v. Gilbert, 98-CC-1565 (La.3/2/99), — So.2d -, 1999 WL 1259896. The elements, therefore, of “arising out of’ and “in the course of’ employment are essential to Plaintiffs recovery. A finding that one or the other is not present in the instant case is fatal to Plaintiffs claim and warrants dismissal. Id.
In Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932), the supreme court set forth a two-prong test, which continues to be valid today, to determine if an employee’s actions met the necessary criteria to remain under the auspices of the Workers’ Compensation Act:
(a) an accident occurs in the course of an employment when it takes place during the time of such [¡¡employment, and (b) it arises out of the employment when it is “the result of some risk to which the employee is subjected in the course of his employment to which he would not have been subjected had he not been so employed.”
We find that Plaintiffs actions do not meet the second prong of the Kern test.
Plaintiff, citing Campbell v. Baker, Culpepper & Brunson, 382 So.2d 1046 (La.App. 2d Cir.1980), writ denied, 385 So.2d 793 (La.1980), admits that she deviated from the purpose of the trip, pursuing her employer’s training objectives, but asserts that this case falls under the ambit of a deviation/re-entry analysis. Campbell defines re-entry into the course of employment, for compensation purposes, as occurring when an employee who has deviated from his employment turns back toward the direction of the employment destination for the purpose of discharging his employment duties. We find, however, that this analysis fails to consider the second prong of the Kern test in that a deviation is one that could reasonably be contemplated as humanly incidental to an employee’s service and does not unreasonably increase the risk of injury. (Emphasis ours). Robinson v. F. Strauss & Son, Inc., 481 So.2d 592 (La.1986), citing Kern, supra.
On this record, we find that Plaintiffs and Mr. Forwood’s actions unreasonably increased their risk of injury. We cannot say that it is a reasonable outcome to the attendance of a mandatory meeting for Plaintiff and Mr. Forwood to deviate from their return trip by nine hours consuming alcoholic beverages, dancing and playing pool, until 1:30 a.m. To the contrary, Plaintiff and Mr. Forwood forfeited their opportunity to travel, at least part of the way, on the return trip in daylight hours; and, the late hour and consumption of alcohol affected their ability to remain awake and alert for the trip. The combination of *310 these factors, caused by Plaintiffs and Mr. Forwood’s deviation, increased the risk that they might suffer an injury.
| ^Plaintiff attempts to distinguish Robinson, supra, which utilizes the Kern test, from the case sub judice. It is Plaintiffs position that the injury in Robinson occurred during the deviation, which increased the risk of harm, as opposed to after re-entry in the case sub judice. We find no merit to this argument considering the length of Plaintiffs deviation and the increase in risk caused by the deviation.
Our court in Campbell v. Baker, Culpep-per & Brunson, supra, in discussing Ms. Campbell’s deviation from furthering her employer’s objective by stopping to pick up fast-food on her way back to her office, stated, “[t]he distance and time factors are not great or substantial, but are minimal.” Ms. Campbell’s deviation lasted a matter of minutes, which is greatly distinguished from Plaintiffs deviation of approximately nine hours. Even though Plaintiff and Mr. Forwood were going home when the accident occurred, they had deviated from their employer’s training objective to such an extent as to greatly increase their risk of harm.
In reviewing the jurisprudence concerning re-entry, we find the case of Johnson v. Wallace Industrial Constructors, 224 So.2d 31 (La.App. 1st Cir.1969), to be somewhat similar on its face.[3] We find, however, that the case can be distinguished from the case sub judice. In Johnson, supra, the court declined to hold a four-hour deviation by Mr. Johnson against his widow and son in their recovery for his death under the Workers’ Compensation Act. Mr. Johnson was summoned by his immediate supervisor to New Orleans from his job site in Luling. Mr. Johnson was given use of a company car to make his trip. He and his immediate supervisor discussed business over drinks and dinner and took a walk through the French Quarter, departing each other’s company at approximately 1:00 a.m. Although Mr. Johnson told his supervisor he was going to stop back by an art store they had previously visited, there is no accounting of Mr. Johnson’s activities 17from 1:00 a.m. until 5:20 a.m. when he was involved in a fatal car accident. Mr. Johnson was headed in the direction of the job site when the accident occurred. His job required that he be at the job site by 6:30 a.m.
The court in Johnson, supra, stated:
Of course, we cannot say what Mr. Johnson’s immediate purpose was at the moment of his death. We think it reasonable to assume, however, that he was returning either to his home or the job site. In any event, he was heading in that direction, and whatever may have been in mind, what he was doing was bringing him closer to the completion of his mission, and therefore, coincided with a business purpose.
We believe that an employee, whose job gives him wide latitude in carrying out his duties, can be engaged in a personal mission, and at the same time, be furthering the interests of his employer. The two interests are not mutually exclusive.
We agree with the court’s reasoning under those particular circumstances. We also agree, however, with the court’s succinct statement that, “[e]ach case of this type must be decided in the light of its own circumstances.”
We do not find, therefore, that the result in Johnson, supra, flows from the circumstances and facts of the ease sub judice. There was no evidence concerning what Mr. Johnson was doing during the 4-hour and 20 minute lapse of time between the moment he left his employer and the moment of his car accident. It would not be unreasonable to speculate that Mr. Johnson pulled over to sleep for a few hours in his car before attempting to drive back to Luling, in furtherance of his employer’s *311 objectives. In the case sub judice,however, Plaintiff was departing Baton Rouge at a late hour, not because she had been pursuing her employer’s business until that time, but because she had been engaged in activities of a personal nature. Moreover, we do know what Plaintiff was doing during the hours of her deviation, i.e., consuming alcohol at a restaurant and in three different bars. Another issue to consider is the length of time of the deviation. In Johnson, supra, there were approximately four hours and twenty minutes of possible deviation. In |Rthe case sub judice, there are nine hours of deviation, over twice the time in Johnson, supra. We, therefore, do not find Johnson, supra, to be controlling.
Finally, Plaintiff asserts as the impetus behind her lengthy deviation the fact that, although she and Mr. Forwood were currently equals in their employment, Mr. Forwood had been her supervisor for many years and she still felt herself to be his subordinate, under his control and supervision. She asserts, therefore, that she had no control over the situation and felt obligated to continue in the deviation as long as Mr. Forwood so chose. Plaintiffs actions do not support such a conclusion. She and Ms. Weeks testified that Plaintiff, not Mr. Forwood, arranged for them to get together after the meeting. It seems illogical that Plaintiff would impose her plans on Mr. Forwood if she felt she was under his control and supervision.
We find, therefore, that Plaintiff was a willing participant in a lengthy deviation from her employer’s training objectives that substantially and unreasonably added to the risk of injury.
CONCLUSION
For the foregoing reasons, the ruling of the WCJ granting the motion for summary judgment of Defendant, Shoney’s Restaurant, and dismissing the claim of Plaintiff, Rose Searcy, is hereby affirmed. All costs associated with this appeal are cast to Plaintiff.
AFFIRMED.
CARAWAY, J., dissents with written reasons.

. Mr. Forwood was not intoxicated at the time of the accident.

. Both of Plaintiff’s ankles were badly broken, requiring bone and skin grafts. She also suffered two broken vertebrae, cracked ribs and superficial head injuries which required several hundred stitches.

. This case was not cited by Plaintiff in her brief or at oral argument.