761 So.2d 507 (2000)
Michael TIMMONS and Wanda Timmons
v.
Stacie Michelle SILMAN and State Farm Fire and Casualty Company and State Farm Mutual Auto Insurance.
No. 99-C-3264.
Supreme Court of Louisiana.
May 16, 2000.
Rehearing Denied June 16, 2000.
*509 Joe D. Guerriero, Guerriero & Guerriero, Monroe, Counsel for Applicant.
Jan Peter Christiansen, Hudson, Potts & Bernstein, Monroe; Charles S. Smith, Hayes, Harkey, Smith & Cascio, Monroe, Counsel for Respondent.
KNOLL, Justice.[*]
The writ before us concerns whether an employee's deviation from an employment related errand is so substantial as to render her deviation outside the course and scope of employment. During the deviation, a multi-vehicle accident occurred between Stacie Michelle Silman (Silman), Michael Timmons, and Bobby Hamilton (Hamilton)[1] in the intersection of 18th Street and Stubbs Avenue in Monroe, Louisiana. In addition to filing suit against Silman and her motor vehicle insurer for injuries arising out of the accident, Michael Timmons and his wife, Wanda, (the Timmonses) filed suit against the insurer of Silman's employer, State Farm Fire and Casualty Insurance Company (State Farm), alleging that Silman's employer was vicariously liable for the damages arising out of Silman's fault. The trial court and court of appeal held that Silman's deviation was not in the course and scope of her employment, concluding that at the time of the accident she was on a personal errand unrelated to her employment. After a careful review of the record and applicable law, we conclude that the lower courts were correct in finding that Silman was not within the course and scope of her employment due to her substantial deviation from her employment duties. Accordingly, we affirm the lower courts.

Facts
Silman had been employed by attorney Catherine Stagg (Stagg) as a clerical assistant in Monroe, Louisiana for six months. As part of her duties as a clerical assistant, Silman ran errands, including traveling to the downtown post office to pick up the firm's mail and get postage for the firm's postage meter and also to the Central Bank located on the corner of North 18th Street and Stubbs Avenue to make firm deposits.
During an office Christmas luncheon on the day of the accident, Silman received her Christmas bonus check from Stagg. Shortly after returning to the office from lunch, Stagg instructed Silman to go to the post office and refill the firm's postage meter, and expected her to return with the filled meter. This task would require Silman to either walk or drive her car southwest four blocks to Monroe's downtown branch of the United States Post Office. Silman, using her personal vehicle to go to the post office, refilled the firm's postage meter and put it in her car. Rather than return to the firm, she then decided to embark on a personal errand and proceeded to the bank to cash her Christmas bonus check. On her way to the bank, she passed within one or two blocks of the firm without stopping to return the postage meter, and traveled northeast eighteen blocks *510 beyond her place of employment. There was a branch of Central Bank located between the post office and her place of employment, but Silman was unaware of its location and did not use this branch bank. Before she reached the bank, Silman made a left turn in the path of an oncoming car in the intersection of North 18th Street and Stubbs Avenue and was thrust into Michael Timmons's car as he sat at the traffic light on Stubbs Avenue.

Procedural History
The Timmonses filed suit against Silman, her automobile liability insurer, and Stagg's insurer, State Farm.[2] The Timmonses claimed that Silman was in the course and scope of her employment with Stagg at the time of the accident, and, therefore, Stagg was vicariously liable. State Farm filed a motion for summary judgment on the issue of Stagg's vicarious liability, alleging Silman's deviation to the bank was not within the course and scope of her employment with Stagg. The trial court granted State Farm's motion for summary judgment, dismissing it from the litigation, and the court of appeal affirmed. Timmons v. Silman, 28,139 (La.App. 2 Cir. 5/10/96), 675 So.2d 287. On a writ of certiorari to this Court, we granted the Timmonses' application, vacated and set aside the lower courts' judgments, and remanded the matter for a trial stating that genuine issues of material fact remained precluding summary judgment. Timmons v. Silman, 96-1724 (La.10/11/96), 680 So.2d 661.
After the case was remanded and transferred to another division of the district court, the Timmonses moved for summary judgment on the same issue regarding whether Silman was in the course and scope of her employment with Stagg at the time of the accident. The trial court granted the Timmonses' motion and it was State Farm who then applied to the Second Circuit for relief. The appellate court granted State Farm the relief it requested, that is, a denial of the Timmonses' summary judgment motion, and remanded the case to the trial court for a trial on the merits.
After a bench trial, the court dismissed State Farm finding that Stagg was not vicariously liable as Silman was not in the course and scope of her employment at the time of the accident due to her personal deviation. The court of appeal affirmed. Timmons v. State Farm Fire & Cas. Ins. Co., No. 30,036 (La.App. 2 Cir. 5/29/97) (unpublished opinion). We granted certiorari to determine the correctness of the lower courts' judgments. Timmons v. Silman, 99-3264 (La.2/4/00), 753 So.2d 842, 2000 La. LEXIS 380.

Law and Discussion
Under Louisiana law, an employer is answerable for the damage occasioned by its servants in the exercise of the functions in which the servant is employed. La. Civ.Code art. 2320. Specifically, an employer is liable for its employee's torts committed if, at the time, the employee was acting within the course and scope of his employment. Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994, 996. An employee is acting within the course and scope of his employment when the employee's action is "of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." Orgeron v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224, 226-27. An employee may be within the course and scope of his employment yet step out of that realm while engaging in a personal mission. See Denis Paul Juge, Louisiana Workers' Compensation § 8:8, at 8-59 (2nd ed.1999).
The mere fact that an employee is performing a personal errand while on an employment related errand does not automatically *511 compel the conclusion that the deviation removes the employee from the course and scope of employment. Generally, "[a]n identifiable deviation from a business trip for personal reasons takes the employee out of the course of employment until the employee returns to the route of the business trip, unless the deviation is so small as to be disregarded as insubstantial." 1 Larson's Workers' Compensation Law § 17-1 (emphasis added); see also Malone & Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation § 174, at 405 & n. 1.
Silman was clearly within the course and scope of her employment when she traveled to the post office to refill the firm's postage meter. This is not disputed. After the business errand was completed, Silman deviated from the business route to go to the bank, and, on her way to the bank, the accident in question occurred. In determining whether Silman's deviation to the bank was substantial or insubstantial, we will look at all the facts and circumstances of the deviation, including such illustrative factors as when and where, in relation to the business errand, the employee deviates from the employment related errand and commences with his personal errand, the temporal and spacial boundaries of the deviation, the nature of the employee's work, the additional risks created by the deviation, and the surrounding circumstances. See 1 Larson's Workers' Compensation Law § 17.06. This list of considerations is non-exhaustive, and a court should carefully consider all the facts unique to the case before it. When considering the foregoing factors, the trial court's findings of fact are entitled to great deference and should not be disturbed unless those findings are manifestly erroneous or clearly wrong. Baumeister, 673 So.2d at 998.
In examining the when and where of a deviation, it is generally held that "[w]hen an employee deviates from the business route by taking a side-trip that is clearly identifiable as such, the employee is unquestionably beyond the course of employment while going away from the business route and toward the personal objective." 1 Larson's Workers' Compensation Law § 17.03[1], at 17-14 (emphasis added). In this case, Silman was on her way to the bank at the time of the accident, i.e., she was "going away from the business route and toward the personal objective." The Timmonses argue that because Silman retained the postage meter in her possession when she went to Central Bank, Silman had not completed her employment errand. Although we find this aspect of the deviation not controlling, it can be a persuasive factor if there is evidence of a linking relationship between the postage meter and the deviation. If not, then the mere presence of the postage meter in Silman's car could justify almost any deviation and in turn would untenably lead to the exposure of the employer to untold, unrelated risks of employment. To accept the Timmonses' argument would make an employer the insurer of all accidents arising out of an employee's personal errands absent a linking relationship. Here, Silman had completed her employment errand with the exception of returning to the office with the postage meter. Her deviation was only incidental to, and not as a result of or related to, the employment errand. The fact that Silman had completed her errand for her employer and passed up the place of employment to deviate for a personal errand weighs heavily against finding the deviation within the course and scope of employment.
In turning to the temporal aspect of the deviation, there is no evidence in the record as to the duration of the deviation. However, since we know that Silman was going out of her way for eighteen blocks in her automobile and there is nothing in the record to suggest any intervening occurrences, we assume that the time it took her to deviate to the bank would not have been an overly extended amount of time. This aspect would weigh in favor of Silman's *512 deviation being within the course and scope of employment since the deviation was of relatively minor duration. However, more than a short duration for the personal errand is needed to justify a deviation falling within the course and scope of employment, i.e., weighing all of the factors that increase the risks of exposing the employer to vicarious liability.
Regarding the spacial element, Silman's deviation took her out of downtown Monroe and to an area approximately eighteen blocks away from her employment. These eighteen blocks were on the other side of her employment and in the opposite direction from the post office. She passed within a block or two of her employment on her way to Central Bank, and, instead of terminating her employment errand as expected by Stagg, she kept driving past the law office and on to her personal destination. The Timmonses argue, however, with some persuasion, that eighteen blocks is not a great distance. While we recognize that eighteen blocks is not a great distance, it is significantly farther than the post office, which was only four blocks away from the office. Having come so close to her place of employment, yet traveling eighteen blocks in the other direction, weighs against Silman's deviation being deemed insubstantial. Had Silman visited the branch of Central Bank located between her office and the post office, we would be presented with a closer set of facts favoring an insubstantial deviation regarding the temporal and spacial elements. There is no bright-line rule in determining what is a substantial or insubstantial deviation. See Malone & Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation § 174, at 406. This determination is a fact driven inquiry made on a case-by-case basis.
Focusing on the nature of the employee's work, part of Silman's employment duties included going to the post office and the bank for Stagg. However, on this particular occasion Silman was not instructed, or expected, to go to the bank for Stagg. Silman's motivation for going to the bank that day was purely personal, in that she unilaterally decided to cash her Christmas bonus check while on an errand to the post office for Stagg. The Timmonses argue that Silman's employment led her to the 18th Street branch of Central Bank as that was the bank where she took care of the firm's financial needs. Specifically, Silman had no checking account and knew of no other bank in the Monroe area where she could cash her check, save this one, and her knowledge of it arose from her employment. When she went to this bank on firm business, she would cash her payroll check at this time or, if she had no business banking that day, she would go to that branch after she got off work and cash her check. This was the first time she had made a special trip solely to cash her check. However, contrary to the Timmonses' assertions, the fact that she went to this branch of Central Bank to attend to firm business on a number of occasions is irrelevant. At the time of her deviation, Silman had no firm business to attend to at the bank. Instead, she traveled to the bank during her working hours for purely personal reasons without Stagg's permission, instruction, or knowledge, and beyond Stagg's expectations. Essentially, the Timmonses argue that since Silman was accustomed to using this bank because of her employment, this somehow makes her deviation employment related. We fail to see how familiarity with this particular bank through employment related errands, with nothing more, would cause this deviation for a personal reason to fall within the course and scope of employment.
"If the incidents of the deviation itself are operative to producing the accident, this in itself will weigh heavily on the side of non-compensability." 1 Larson's Workers' Compensation Law § 17.06[1], at 17-33. At oral arguments the parties spoke about the elevated risks inherent in the intersection at 18th Street and Stubbs Avenue, an intersection that Silman *513 would not have traveled through had she returned to the office after filling the postage meter. However, since the parties failed to put on evidence regarding the additional risks created by the deviation, we are unable to consider this aspect of the deviation. Nonetheless, the record makes clear that at the time of this accident Silman had completed her employment related mission of refilling the meter and, instead of terminating the mission as her employer expected, she unilaterally decided to deviate on to a personal errand wholly unrelated to the business task. While the business errand required that Silman travel only four blocks, her personal errand required that she travel an additional eighteen blocks in the opposite direction. The accident occurred while she was attempting to cash her check. Clearly, her personal deviation dwarfed the business portion of the trip, such that it no longer can be said that it was a circumstance of her employment. Thus, the record supports the finding that it was the incidents of her personal deviation itself that were operative to producing this accident. As such, this factor weighs heavily against finding the deviation within the course and scope of the employment.
This case does not present this Court with a question of the reasonableness of Silman's unilateral decision to deviate to the bank. Stagg implied in her deposition that, although she ordinarily would not have minded, she "probably" would not have allowed Silman to cash her check on this day because the office was busy preparing to close for the Christmas holidays. However, that an employee would not have been fired, or even reprimanded, for their deviation is not the determinative factor. The focus of the Court is the determination of whether the deviation is substantial or insubstantial rather than whether it is reasonable. While the reasonableness of a deviation can have some bearing on this determination, it is not the controlling factor. A reasonable determination would militate against Silman's deviation being employment related, since it would have been more reasonable for her to have stopped at the bank branch that was located just off the route to the post office rather than to have traveled eighteen blocks past her place of employment.
In essence, Silman decided to deviate from her assigned errand of four blocks and unilaterally extended her trip eighteen blocks by going to the bank to cash her bonus check and thereby substantially increased the risk of exposing her employer to vicarious liability with no corresponding benefits received by her employer. We have examined numerous factors that demonstrate how this deviation was substantial in nature in relation to the employment related errand, and thereby elevated the risk of exposing Stagg to vicarious liability. The very nature of these factors being positively answered and showing a substantial deviation demonstrates that Silman exposed her employer to risks which were not inherent in her employment. Because Silman exposed her employer to the risk of liability as she unilaterally decided to perform a personal errand after she essentially completed her employment errand and came within a block or two of her place of employment, we find that Silman was not within the course and scope of her employment. Thus, we find no manifest error in the lower courts' finding of no vicarious liability on the part of Stagg. Accordingly, State Farm, as Stagg's insurer, has no responsibility to the Timmonses for their injuries arising out of the accident.

Decree
For the foregoing reasons, the judgments of the lower courts, finding State Farm Fire and Casualty Insurance not liable to Michael and Wanda Timmons for the injuries arising out of a motor vehicle accident between Michael Timmons and Stacie Silman, are affirmed.
AFFIRMED.
CALOGERO, C.J., and JOHNSON and LEMMON, JJ., dissent and assign reasons.
*514 CALOGERO, Chief Justice, dissenting.
After considering all the facts and circumstances of this particular deviation, I find that Silman's deviation to the bank though it was made after performing the employer's errand and before returning to her place of employmentwas insubstantial when compared to the principal errand. Thus, I would find that Silman was within the course and scope of her employment at the time of the accident. Accordingly, I respectfully dissent.
LEMMON, J., dissenting.
I cannot conclude that an employee on a trip ordered by the employer during regular working hours is outside the course and scope of employment because of a deviation that was entirely reasonable from an objective point of view and was insignificant in terms of time and distance.
Among the duties of the employee in this case, a clerical assistant, was the running of errands, including post office and bank runs. The errand at issue was a post office run from which the employee deviated, for a few minutes and a few city blocks in an urban area, to call at a bank that she frequently visited in performing her employment duties. Indeed, she went to the bank to cash a check that was related to employmenta Christmas bonus that had just been handed to her at a lunch sponsored by her employer.[1]
The only thing that makes this case close, in my view, is the fact that the employer-ordered trip to the post office was itself brief in distance and duration. However, contrary to the majority's position, I believe that the reasonableness of the purpose of the personal deviation is a very significant factor in determining course and scope of employment, particularly in a close case.[2] I would take a different view if the employee had taken the same brief deviation to drink an alcoholic beverage or to visit a gambling casino. But when the facts of this case are viewed from an objective standpoint, a reasonable employer surely would not have objected to this brief deviation by the employee to cash her employment bonus check.[3] Under such circumstances, the employee has tacit approval for the reasonable deviation and remains in the course and scope of employment.
I would reverse the judgment of the court of appeal.
*515 JOHNSON, J., dissenting.
Defendant, Stacie Silman, was on an errand for her employer to have the postage meter refilled at the post office in downtown Monroe. While out of the office for her employer's benefit, she decided to cash her bonus check. Defendant went to a branch of Central Bank where she regularly made deposits as part of her job and knew the bank personnel. While en route, she was involved in a motor vehicle accident with the plaintiff. The majority concludes that defendant was not within the course and scope of her employment, and thus, State Farm, as her employer's insurer, is not liable to plaintiffs for injuries arising out of the motor vehicle accident. For the following reasons, I disagree.
An employee is entitled to receive worker's compensation if disabled "by accident arising out of and in the course of his employment." La. R.S. § 23:1031. Our courts have repeatedly awarded compensation for injuries sustained by employees while away from the place of employment attending to personal needs which are incidental to the employment or which enable the employee to work better. See e.g. Gray v. Broadway, 146 So.2d 282 (La.App. 2d Cir.1962) (truck driver went home to get driver's license); Alexander v. Insurance Co. of Pa., 131 So.2d 558 (La.App. 3d Cir.1961) (worker went home to pick up work boots); St. Alexandre v. Texas Co., 28 So.2d 385 (La.App.Orl.1946) (employee left plant to purchase soft drink); Rigsby v. John W. Clark Co., 28 So.2d 346 (La. App. 1st Cir.1946) (bookkeeper injured when he left work premises to fix hanging charged wire that created danger to others). The courts have consistently held that an employee is protected during work hours, despite minor deviations from instructions or place of work, "if what he does could reasonably be contemplated as humanly incidental to his service as an employee and does not unreasonably increase the risk of injury." See Malone, Louisiana Workmen's Compensation Law, Sections 166-68 (1951). Curtis Robinson v. F. Strauss & Son, Inc., 481 So.2d 592 (La.1986). By that same reasoning, an innocent who is injured by an employee while within the course and scope of his employment may recover from the employer by means of vicarious liability.
The majority finds that defendant's deviation to the bank to cash her Christmas bonus check was not within the course and scope of her employment essentially because of the direction and distance (18 blocks) involved in the route. This conclusion ignores the fact that plaintiff regularly did banking at this particular branch for her employer and not some other. She knew the bank personnel at this location and did not have an account at another bank. Thus, this bank was the only bank with which she was familiar. Doing business at this branch was a habit introduced to her by doing business for her employer. It is irrational to think a person would change his regular bank due to proximity, if both are comparable in distance. I do not believe this employee's deviation to cash her Christmas bonus check was so substantial as to remove her from the course and scope of employment.
The fact that the "predominant motive of the servant is to benefit himself ... does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service. So also, the act may be found to be in the service if not only the manner of acting but the act itself is done largely for the servant's purposes..." Timmons v. Silman, 28,139 (La. App.2d Cir.05/10/96), 675 So.2d 287 (Marvin, J., dissenting) (quoting Ermert v. Hartford Insurance Co., 559 So.2d 467 (La.1990)). In the present case, there is ample evidence to suggest that plaintiff would never have left the office on this day absent the directive to refill the postage meter. In leaving the office, plaintiffs departure from the office was a clear benefit to her employer. The personal errand *516 is of no moment as she was still in the process of returning the meter to the office. The fact that she chose to use the branch used by her for office banking is not bad judgment, but sensible. The majority frowns on this choice and suggests had she chosen another branch located more closely to the office, a substantial deviation may not have been found. She was not required to travel any particular route, and the fact that she altered the route should not surrender her employer's liability to her or others she injured while within the course and scope of her employment. This trip was neither forbidden nor unforeseeable, as plaintiff regularly made this same trip on behalf of her employer. The fact that she left the office to run an errand for her employer, and included a minor errand that the employer did not deem inappropriate would make this deviation not substantial. As a insubstantial deviation, the employee's accident was within the course and scope of employment and State Farm, as the employer's insurer, should be responsible for plaintiff's injuries caused by the employee defendant.
NOTES
[*] Marcus, J., not on panel. See La. S.Ct. R. IV, Part 2, § 3.
[1] Hamilton was not made a party to this litigation.
[2] Silman and her automobile liability insurer have been dismissed from this suit after a settlement between them and the Timmonses.
[1] The majority's result would be warranted if the employee had made a special trip to the bank to cash the same check during her lunch hour, rather than in connection with an employer-ordered trip during regular working hours.
[2] In "close and troublesome cases," such as this one, "considerations other than the distance, direction and shape of the deviation are resorted to by the courts to resolve the difficulty." 1 Larson's Workers' Compensation Law § 17.06 at XX-XX-XX-XX.

One such additional consideration is whether the risks of the deviation are causally related to the accident. "If the incidents of the deviation itself are operative to producing the accident, this in itself will weigh heavily on the side of non-compensability." Illustrative is the "deviation-with-drinking" cases in which "the fact that the drinking usually combined with driving, in itself added a notorious hazard and has undoubtedly been a factor in some denials of compensation, whether specifically mentioned or not." Id.
Another such additional consideration is the nature of the employee's work and travel. An example, especially apt to this case, is an employee with "general permission to accomplish personal errands during his daily trip to the post office using the company automobile." Under the latter scenario, it has been held that "the employer's acquiescence in the practice, as in horseplay and athletic activities cases, extended the course of employment to include the personal errand." Id.
Applying these precepts, "the courts now generally recognize that human beings do not run on tracks like trolley cars...." Id.
[3] The employer in this case admitted that she normally would not have objected to such a deviation. While she equivocated ("probably not") about this particular deviation because it was a heavy work day, the test should be an objective one based on a before-the-deviation standard rather than an after-the-accident one.