I JAMES L. CANNELLA, Judge.
Defendant, Jefferson Parish Medical Society (JPMS), appeals from a workers’ compensation judgment in favor of Plaintiff, Jerelyn Sallean. We reverse.
For approximately 14 years, Plaintiff was employed by Defendant as a part-time office assistant and worked in a two-person office with her supervisor, Charlene Baudier (Baudier). The office is located in Metairie on Hearst Street, just off Transcontinental Drive. Plaintiffs hours of employment were from 9:00 a.m. to 5:00 p.m. on Monday and Tuesday and from 9:00 a.m. to 1:00 p.m. on Wednesday, Thursday, and Friday.
One of Plaintiffs jobs was to prepare board member’s checks for the signature of the Treasurer. On February 10, 1999, Plaintiff was attempting to print the checks so that they would be ready for 3:00 p.m. when the Treasurer was expected to arrive at the office. However, at approximately 11:15 a.m., the Imprinter jammed and neither she nor Baudier could fix it. Baudier instructed Plaintiff to try to find a repair shop. On the third telephone call, Plaintiff found a shop that would try to fix it immediately. The shop was located in New Orleans on Spanish Fort Boulevard. Baudier approved taking the printer to this location because she lived nearby and could pick it up the next day, if it could not be repaired that day.
Plaintiff left the office with the printer, using her own car. She drove down Hearst Street to Transcontinental Drive, where she turned right and continued traveling north to West Esplanade Avenue. She turned right on West Esplanade Avenue, to Old Hammond Highway at the Orleans Jefferson parish line. From there she continued East to Robert E. Lee Boulevard then to Old Spanish Fort Boulevard and the shop.
Plaintiff was in the printer’s shop for approximately 10 minutes. The machine only needed a new cartridge, which the printer’s shop had. Plaintiff then left and drove back toward her office using the same route in reverse. However, when *1207 she arrived at the intersection of West Esplanade Avenue and Transcontinental Drive, she was stopped by a red traffic light. While waiting for it to change, she decided to go to a Whitney Bank, located across the intersection on the corner, to close out a personal account. When the light permitted, Plaintiff crossed the intersection, drove a block where she turned right on Chastant Street, which provided the access to the bank parking lot. Plaintiff parked her car and entered the bank. After she completed her personal business, she walked out of the bank. As Plaintiff neared her car, she tripped on a broken piece of concrete which caused her to fall to the ground.
14Following the fall, Plaintiff contacted Baudier to inform her that she was being taken to a local emergency room by one of the bank’s employees. Another bank employee took the printer into the bank where Baudier was able to pick it up later.
Plaintiff suffered abrasions to her face and both knees, a micro fracture to one knee, a severe ulnar nerve injury, and a torn rotator cuff in her shoulder. She needs surgery on her ulnar nerve, her knee and shoulder. Some of Plaintiffs medical expenses, but not all, were paid by the bank. Defendant paid Plaintiffs salary as sick leave during the times when she was unable to work.
On February 9, 2000, Plaintiff filed a Disputed Claim for Compensation requesting workers’ compensation benefits. A trial was held on September 7, 2000. On October 16, 2000, the trial judge rendered judgment in favor of Plaintiff, finding that 1) she was injured in the course and scope of her employment, 2) she is entitled to medical and transportation expenses and, 3) in the absence of her salary being paid, she is entitled to temporary total disability benefits. The trial judge further found that Defendant was not arbitrary and capricious in denying the claim.
On appeal, the Defendant argues that Plaintiff was not in the course and scope of her employment when she was injured, nor did the injury arise out of her employment. The Defendant also contends that the doctrines of minor deviation and re-entry are inconsistent with Mundy v. Dep’t of Health and Human Resources, 593 So.2d 346, 349 (La.1992) and Brown v. Ackel, 00-287 (La.App. 5th Cir.7/25/00), 767 So.2d 827, or, if not, that those doctrines should either be rejected by this Court, or found to be inapplicable under the facts. | .-Plaintiff disagrees, citing Timmons v. Silman, 99-3264 (La.5/16/00), 761 So.2d 507.
The Louisiana Workers’ Compensation Act provides that an employer is responsible for compensation benefits to an employee who is injured in an accident that occurs in the course and scope of the employment and that arises out of the employment. Compensation benefits are the employee’s exclusive remedy against the employer for such an injury. La. R.S. 23:1031-32. The employer has the burden of proving entitlement to immunity when it seeks to avail itself of tort immunity under La. R.S. 23:1032. Mundy 593 So.2d at 349.
The “arising out of’ determination focuses on the character or source of the risk which gives rise to the injury and on the relationship of the risk to the nature of the employment. Mundy, 593 So.2d at 349. “Course of employment” is determined by “time, place, and employment activity.” Id. Generally, the accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment. Id. However, an accident has also been held to arise out of employment if the conditions or obligations of the employment caused the employee, in the course of employment, to be *1208 at the place of the accident at the time the accident occurred. Id. Thus, “when the employee is squarely within the course of his employment, virtually any risk (whether an increased risk or not) has been considered as arising out of employment.” Mundy, 593 So.2d at 349.
In Mundy, the Court stated:
The principal objective of the “arising out of employment” requirement is to separate accidents attributable to employment risks, which form the basis of the employer’s obligation under the compensation system, from accidents attributable to personal risks, for which the employer should normally not be responsible. 1 A. Larson, Workmen’s Compensation § 7.00 (1990). The risks which have caused the greatest difficulty are those that have neither a | ^particular employment character nor a particular personal character. Id.
This court has declined to view the “course of employment” and “arising out of employment” requirements as separate and unrelated concepts. Rather, this court has recognized the mutual interdependence of the two concepts in determining the relationship of the injury to the employment. See W. Malone & H. Johnson, supra at § 144; — 1 A. Larson, supra at § 29.00, 29.10. In a close case a strong showing of “course of employment" has been held to counterbalance a relatively weak showing of “arising out of employment. ” See Ray-bol v. Louisiana State University, 520 So.2d 724 (La.1988) (a custodial employee of a university, assaulted by a jilted lover while performing her regular employment duties during regular working hours in an unoccupied portion of a dormitory, was entitled to compensation because the “course of employment” showing was clear, and the employee was so totally innocent of causing or inviting the attack that the assault could be viewed as perpetrated by a total stranger). When the accident occurs at such a time or place or during such an activity so that the employee is barely within the outer boundary of the “course of employment” inquiry, a very strong showing by the employee that the risk arose out of the employment is necessary to establish the relationship between the injury and the employment necessary for entitlement to compensation. See Robinson v. F. Strauss & Son, Inc., 481 So.2d 592 (La.1986) (denial of compensation affirmed when “course of employment” showing was weak because employee had deviated from employment task to attempt reconciliation with a neighbor who was jealous over the employee’s attention to the neighbor’s girlfriend, and the neighbor’s shooting of the employee provided a weak “arising out of employment” showing).
In the present case the “arising out of employment” inquiry reveals that the risk which gave rise to the injury was not greater for Plaintiff than for a person not so employed. Moreover, while the conditions of the employment arguably caused Plaintiff to be at the place of the attack at the time the attack occurred, there were other alternative routes for her to reach her work station. Inasmuch as the risk which gave rise to the injury was a neutral risk that was not related either to Plaintiffs employment or to her personal life, the “arising out of employment" showing by the employer, while not particularly strong, could be considered sufficient if there was a strong “course of employment” showing. [Emphasis added]
Mundy, 593 So.2d at 349-50.
In this case, there is a weak showing that the accident arose out of the employment. The risk to Plaintiff was no greater than to the general public. |7Plaintiff was walking to her car in order *1209 to resume traveling back to work when she tripped. Furthermore, this weak showing for the “arising out of’ factor, is not counterbalanced by a strong showing that she was in the “course and scope” of her employment.
In Mundy, the employee was sexually attacked in an elevator on the employer’s premises while on her way to clock-in at work. In Brown, the plaintiff, who was employed by the YMCA, was going to lunch when she fell on the wet sidewalk near the front entrance of the YMCA. She had clocked-out before leaving and she was not paid for her lunch break. Both Mundy and Brown discussed the “threshold doctrine”, an exception to the general rule that generally, an accident that occurs while the employee is going to or returning from work does not occur in the course of the employment. This exception has been recognized when an accident occurs at a place with an unusually hazardous travel risk which is immediately adjacent to, but not on, the employer’s premises. In neither case did the plaintiffs prevail on the course and scope question.
We find that the Mundy decision does not preclude the application of the doctrines of minor deviation or re-entry into the employment in reference to the issue of course and scope of employment here. Mundy and Brown did not discuss these two issues. Those cases involved the threshold doctrine since the respective plaintiffs sustained their injuries arriving at or leaving work. However, Timmons v. Silman, 99-3264 (La.5/16/00), 761 So.2d 507 sets out the applicable legal principals relative to the minor deviation doctrine.
In Timmons, the Court recognized the applicability of the “deviation from the employment mission” doctrine in determining whether an employee is within the “course and scope” of employment. Although the analysis was in the context |sof the employer’s vicarious liability for the employee’s tort, rather than workers’ compensation, the Court cited the law on workers’ compensation to reach its conclusion. The majority found that the injury did not arise from the plaintiffs employment and that the employee was not in the course and scope of her employment when she was injured in an automobile accident after she drove 18 blocks past her office after going to the post office to fill the postage meter. The post office was four blocks away from the office and she had to pass it to go to the bank.[1] In reaching its conclusion, the majority of the Court stated:
An employee may be within the course and scope of his employment yet step out of that realm while engaging in a personal mission. See Denis Paul Juge, Louisiana Workers’ Compensation § 8:8, at 8-59 (2nd ed.1999).
The mere fact that an employee is performing a personal errand while on an employment related errand does not automatically compel the conclusion that the deviation removes the employee from the course and scope of employment. Generally, “[a]n identifiable deviation from a business trip for personal reasons takes the employee out of the course of employment until the employee returns to the route of the business trip, unless the deviation is so small as to be disregarded as insubstantial.” 1 Larson’s Workers’ Compensation Law § 17-1 (emphasis added); see also Malone & Johnson, 13 Louisiana Civil Law Treatise, Workers’ Compensation § 174, at 405 & n. 1.
Timmons, 761 So.2d at 510-11.
In determining whether a deviation was substantial or insubstantial, the *1210 court must look at all the facts and circumstances of the deviation. Timmons, 761 So.2d at 511. Those factors include when and where, in relation to the business errand, the employee deviates from the employment-related errand and commences with her personal errand, the temporal and spacial boundaries of the deviation, the nature of the employee’s work, the additional risks created by the 1 gdeviation, and the surrounding circumstances. Id. This list of considerations is non-exhaustive. Timmons, 761 So.2d at 511.
In examining the “when and where” of a deviation, it is generally held that “[w]hen an employee deviates from the business route by taking a side-trip that is clearly identifiable as such, the employee is unquestionably beyond the course of employment while going away from the business route and toward the personal objective.” Timmons, 761 So.2d at 511. As to the temporal aspect, more than a short duration for the personal errand is needed to justify a deviation falling within the course and scope of employment. Timmons, 761 So.2d at 512.
“There is no bright-line rule in determining what is a substantial or insubstantial deviation. This determination is a fact driven inquiry made on a case-by-case basis.” Timmons, 761 So.2d at 512.
In this case, the Plaintiff testified that she often used her own car to run errands for the Defendant, although Baudier stated that it was not acceptable for Plaintiff to run personal errands while on a work mission. Baudier also claimed that she did not expect Plaintiff back because it was past 1:00 p.m. when Plaintiff normally ended her work day. Technically, Plaintiff was no longer “on the clock”. Although, Plaintiff stated that she felt she needed to return because it was part of her job to complete the check preparations, this was not supported by Baudier, who also commonly prepared the checks. Like Tim-mons, Plaintiffs employment mission in this case was completed when she deviated to the bank.
The Plaintiff also claimed that the bank was basically on her route. However, in order to reach the bank, she had to cross the intersection on which she would have turned to get back to the office. She then traveled a block past the intersection and turned right twice into the parking lot. She deviated | ^approximately 125 feet. Her business was concluded in about 15 to 20 minutes. The trial judge believed that this was not a substantial deviation. We disagree. Based on the totality of the circumstances in this case, we find that the deviation was sufficiently substantial to remove Plaintiff from her employment. Thus, we find that the trial judge was clearly wrong in determining that Plaintiff was entitled to workers’ compensation benefits.
Accordingly, the judgment of the workers’ compensation court is hereby reversed.
Costs of this appeal are to be paid by the Plaintiff.
REVERSED.

. Three justices dissented in that case.