GAIDRY, J.
[¡/This is an appeal of a summary judgment dismissing the plaintiffs’ claims against an automobile driver’s employer and its insurer on the grounds that the employer was not vicariously liable for the driver’s negligence. We affirm.
FACTS AND PROCEDURAL HISTORY
The plaintiff, Dustin Macaluso, was employed as a tool inspector by Ray’s Radiators, Inc. (Ray’s) in Morgan City, Louisiana. Ray’s was engaged in the business of installation and repair of radiators, coolers, and heat exchangers. Mr. Macaluso’s duties included the pressure testing and repair of radiators but did not include sales or customer solicitation. Arc Industries, L.L.C. (Arc) was an offshore equipment rental company with an office and shop in Morgan City, and was a customer of Ray’s.
On July 11, 2008, a crawfish boil was held at Ray’s. Mr. Macaluso had initially proposed the crawfish boil for employees of Ray’s and other compánies with which it did business, and he personally supplied and boiled the crawfish. He was considered off work and was not paid his hourly wage during the time spent preparing and participating in the crawfish boil.
The defendant, Arthur Oncale, was employed as a service technician or mechanic by Arc, earning an hourly wage. His assigned duties included changing oil, replacing fuel filters, and other work on diesel-powered welding machines. Prior to the date at issue, Mr. Oncale was not personally acquainted "with any employee of Ray’s.
On the date at issue, July 11, 2008, Richard Lasseigne, Arc’s service manager, received a telephone call from an employee of Ray’s, inviting him and the other employees of Arc to the crawfish boil. Mr. Lasseigne relayed the invitation to the employees under his supervision, advising them that if | ¡¡any of them wished to attend the crawfish boil they could do so, provided they “punched out” , of the employee time clock, did not consume alcoholic beverages at the crawfish boil, and returned to work after eating. The Arc employees who wished to attend were advised to do so on a rotating basis, and Mr. Oncale and another employee accepted the offer to attend the crawfish boil during the same time period.
*458 Mr. Oncale and the other Arc employee were instructed to “punch out” or “clock out” on the office’s computer time clock, but because the computer was in the process of being backed up at the time, they could not do so then. Instead, their checkout time of 8:30 p.m. was manually recorded by a clerical employee, and “time clock adjustment request” forms were later used to verify and enter the time they took off work to attend the crawfish boil. The undisputed facts in the record are that Mr. Oncale was considered- by Arc to be on his personal time while attending the crawfish boil and that he was not paid by Arc for his time after leaving his workplace that day.
Mr. Oncale left his .workplace around 3:40 p.m. in his personal vehicle, a 2002 Dodge Neon SRT-4 automobile that he had personally customized. While at the crawfish boil, Mr. Oncale met Mr. Macalu-so. Mr. Oncale declined the offer of a beer from Mr. Macaluso, stating that he was “on the clock” and had to return to work at Arc after eating. In his deposition, he claimed that he made that inaccurate statement simply to make it easier to resist “peer pressure” to consume alcoholic beverages at the informal social gathering.
In the course of conversation between Mr. Oncale and Mr. Macaluso, the subject of Mr. Oncale’s automobile came up. Mr. Macaluso expressed interest in Mr. On-cale’s automobile and the custom work on its engine. Mr. [4Oncale offered to take him for a ride to demonstrate the automobile’s qualities, and Mr. Macaluso accepted the offer, emphasizing that the ride should be short because of his- duties in boiling the crawfish.
Mr. Oncale and Mr. Macaluso left the crawfish boil in the automobile. The accident occurred less than a mile from the premises of Ray’s and at approximately 4:15 p.m., less than 15 minutes after they left. After turning onto Railroad Avenue in Morgan City, Mr. Oncale drove his automobile a distance, turned around on the adjacent levee, and shortly after re-entering the roadway accelerated his automobile to at least 60 and possibly as fast as 103 miles per hour. The posted speed limit was 35 miles per hour. As the automobile traveled over a hill or rise, another vehicle was partially in its lane of travel. Mr. Oncale took evasive action but lost control of his automobile, which struck a telephone pole. Mr. Oncale was charged with, and later pleaded guilty to, reckless operation of a motor vehicle. Mr. Macaluso claimed to have sustained personal injuries as a result of the accident.
On October 3, 2008, Mr. Macaluso and his wife, Mindy L. Macaluso, initiated this action seeking damages for themselves and on behalf of their minor children. Named as defendants were Mr. Oncale, USAA General Indemnity Company (Mr. Oncale’s personal automobile liability insurer), Arc, and Charter Oak Fire and Casualty Insurance Company (Arc’s commercial liability insurer, hereafter referred to as Charter Oak).[1] The plaintiffs subsequently compromised their claims against Mr. Oncale and USAA General Indemnity Company, reserving their rights against Arc and Charter Oak.
|sOn January 4, 2010, Arc and Charter Oak filed a motion for summary judgment, seeking the dismissal of the plaintiffs’ claims against them on the grounds that Mr. Oncale was not acting in the course and scope of his employment at the time of the accident. The motion was heard on *459 April 1, 2010, and the trial court ruled that it would grant the motion. The trial court’s judgment granting the motion and dismissing the plaintiffs’ claims against Arc and Charter Oak with prejudice was signed on April 13, 2010.
On April 26, 2010, the plaintiffs filed a motion for new trial. The trial court dé-nied the motion without hearing on May 18, 2010. The plaintiffs appeal, contending that genuine issues of material fact exist on the dispositive legal issue of whether the accident occurred in the course and scope of Mr. Oncale’s employment with Arc.
STANDARD OF REVIEW
Summary judgment is subject to de novo review on appeal, using the same standards applicable to the trial court’s determination of the issues. Berard v. L-3 Communications Vertex Aerospace, LLC, 09-1202, p. 5 (La.App. 1st Cir.2/12/10), 35 So.3d 334, 339-40, writ denied, 10-0715 (La.6/4/10), 38 So.3d 302. The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A)(2). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
DISCUSSION
In Louisiana, the vicarious liability of employers, also known as the doctrine of respondeat superior, is based upon La. C.C. art. 2320, which |fiprovides that employers are answerable for the damage occasioned by their employees in the exercise of the functions in which they are employed. Henly v. Phillips Abita Lumber Co., 06-1856, pp. 10-11 (La.App. 1st Cir.10/3/07), 971 So.2d 1104, 1112-13. Specifically, an employer is liable for its employee’s torts committed if, at the time, the employee was acting within the course and scope of his employment. Timmons v. Silman, 99-3264, p. 4 (La.5/16/00), 761 So.2d 507, 510. The proper test in determining an employer’s vicarious liability thus consists of two elements: (1) course of employment, which refers to time and place; and (2) scope of employment, which examines the employment-related risk of injury. Richard v. Hall, 03-1488, pp. 5-6 (La.4/23/04), 874 So.2d 131, Í38.
An employee is acting within the course-and scope of his employment when the employee’s action is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve his employer. Timmons, 99-3264 at p. 4, 761 So.2d at 510, citing Orgeron v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224, 226-27. The inquiry requires the trier of fact to determine whether the employee’s tortious conduct was so closely connected in time, place, and causation to his employment duties- as to be regarded a risk oí harm fairly attributable to the employer’s business, as compared to conduct motivated by purely personal considerations entirely extraneous to the employer’s interests. Richard, 03-1488 at p. 6, 874 So.2d at 138.
While the rules for determining an employer’s "vicarious liability for the conduct of both high-ranking and lower-echelon employees are the same, the application of the rules may differ due to the employees’ different duties and responsibilities. See Ermert v. Hartford Ins. Co., 559 So.2d 467, 476 (La.1990). The scope of risks attributable to an employer, increases with the] 7amount of authority and freedom *460 of action granted to the employee in performing his assigned tasks. Id. at 477. The mission and authority that a corporate employer must be presumed to have given its chief executive officer are certainly much broader than that generally given by an employer to lower-echelon employees. Miller v. Keating, 349 So.2d 265, 269 (La.1977). On the other hand, narrower considerations such as whether the tort occurred on employer premises and during regular working hours are more relevant when assessing the conduct of a subordinate employee. Id.
In Ermert, the negligent employee was the president and chief executive officer of the employer corporation. He accidentally shot the plaintiff while at a hunting camp to build duck blinds for the upcoming duck hunting season. The evidence showed that while the executive employee used the camp partially for his own personal recreation, he repeatedly and consistently used it for business purposes, including the entertainment of preferred customers and employees. The evidence further showed that a major part of his employment duties was the development of new business and that the purpose of serving his business by participating in the hunting camp actuated the employee to an appreciable extent. The supreme court agreed with the trial court’s finding that the corporate employer essentially made the risks associated with duck hunting part of its business, in order to obtain direct and referral business,- justifying imposition of vicarious liability on the employer. Id. at 478-79..
An employee may be within the course and scope of his employment, yet deviate from it while engaging in a personal mission. See Timmons-, 99-3264 at p. 4, 761 So.2d at 510. But the mere fact that an employed is performing a personal mission while on an employment-related mission does not automatically -compel the conclusion that the deviation removes him | jjfrom the course and scope of employment. Id., 99-3264 at pp. 4-5, 761 So.2d at 510-11. If the purpose of serving the employer’s business actuates the employee to any appreciable extent, the employer is subject to liability if the act is otherwise within the service -of the business. Ermert, 559 So.2d at 477. Most cases that discuss the issue of deviation involve an employee taking a side trip while in the course of a business trip or errand. In such a case, it is generally held that when the employee deviates from the business route by taking a clearly identifiable personal side trip, the employee is unquestionably beyond the course of employment while going away from the business route and toward the personal objective. Timmons, 99-3264 at pp. 5-6, 761 So.2d at 511. But the issue of deviation cannot always be resolved by application of such a clear-cut general rule, given the variety in factual circumstances.
In order to remove the employee from the course and scope of employment, a deviation must be identifiable as such by its personal, nonbusiness purpose and must be substantial. There is no bright-line rule in determining what is a substantial or insubstantial deviation. This determination is a fact-driven inquiry made on a case-by-case basis. Timmons, 99-3264 at p. 7, 761 So.2d at 512. In making the determination, a court should examine all the facts and circumstances of the deviation, including such illustrative and non-exhaustive factors as: (1) when and where the deviation on a personal errand occurs relative to the employment-related errand; (2) the temporal and spacial boundaries of the deviation, (3) the nature of the employee’s work; (4) the additional risks created by the deviation; and (5) the surrounding circumstances. Id., 99-3264 at p. 5, 761 So.2d at 511. The court should also consider whether there *461 was a “linking relationship” between the employment-related errand and the deviation; that |flis, whether the deviation was the result of or related to the employment or instead only incidental to it. Id., 99-3264 at p. 6, 761 So.2d at 511. Finally, the reasonableness of a deviation can have some bearing upon the determination of its substantiality, but reasonableness is not the conclusive factor. The focus of the court is the determination of whether the deviation is substantial or insubstantial rather than whether it is reasonable. Id., 99-3264 at p. 9, 761 So.2d at 513. .
The mere fact that a deviation is of short duration and does not extend a great distance beyond the geographic bounds of the employment mission does not make it insubstantial for purposes of determining whether it remained within the employee’s course and scope of employment. See Timmons, 99-3264 at .pp. 6-7, 761 So.2d at 511-12. An insubstantial deviation in terms of time and space may nevertheless involve a substantial deviation in purpose, justifying a finding that the deviation was outside the course and scope of employment. Thus, a court must consider not'only the extent of deviation in route or location but also the extent of deviation in purpose in determining the connexity “in time, place, and causation” between the employee’s tort and his employment duties. See Richard, 03-1488 at p. 6, 874 So.2d at 138.
If the incidents or factual elements of the deviation itself are operative in producing the accident, that factor in itself weighs heavily against a finding that the deviation is within the course and scope of employment. Timmons, 99-3264 at pp. 8-9, 761 So.2d at 512-13. That is, if the deviation creates additional risks beyond those inherent in the employment errand and substantially increases the risk of the employer’s exposure to vicarious liability without corresponding possibility of benefit to the employer, the [ 10deviation will generally fall outside the course and scope of employment. See Timmons, 99-3264 at pp. 8-10, 761 So.2d at 512-13.
Although the accident at issue occurred during Mr. Oncale’s regular work hours, he had “punched out” for purposes of his hourly compensation and was not being paid as an employee of Arc at that time. The accident occurred off Arc’s work premises and off the premises of Ray’s, the location where the crawfish boil was held and where Arc had authorized Mr. Oncale to be. While not necessarily conclusive, these temporal and spacial circumstances weigh against a finding that he was in the course of his employment at the time of the accident and in favor of the finding that he was engaged in a deviation from any employment-related mission.
Unlike the executive employee in Er-mert, Mr. Oncale was a lower-echelon employee, and his regular job duties with Arc did not include the entertainment of business colleagues or promotion of company business. There is no evidence that Mr. Oncale repeatedly and consistently attended intercompany social functions, and in fact, his visit to Ray’s on the accident date was his first and .only visit to that business during his employment at Arc. Mr. Maca-luso, to whom the automobile’s qualities were being showcased, was himself a subordinate or lower-echelon employee of Ray’s. These circumstances weigh against a finding that Mr. Oncale was in the scope of his employment.
In determining whether a particular accident may be associated with the employer’s business enterprise, the court must essentially decide whether the particular accident is a part of the more or less inevitable toll of a lawful enterprise. Richard, 03-1488 at p. 5, 874 So.2d at 137- *462 38, citing Ermert, 559 So.2d at 476. When the tort becomes uncharacteristic of the business, vicarious liability is not imposed on the employer. Richard, 03-1488 at p. 1 nil, 874 So.2d at 141. There was no showing or evidence that the particular tort committed by Mr. Oncale was either characteristic of Arc’s business or arose from Mr. Oncale’s employment duties. The evidence shows that intercompany social gatherings motivated at least in part for business promotion were not uncommon in the industry sphere of Ray’s and Arc. However, the evidence does not suggest that simply allowing its rank-and-file employees to attend crawfish boils, hosted by other companies, on their own time, was characteristic of Arc’s business of leasing equipment. At best, Mr. Oncale’s attendance at the crawfish boil was only tangentially connected to his employment duties and Arc’s business interest, and the demonstration drive of his personal automobile was unquestionably further removed from the scope of his employment.
Arguably, there may be some genuine dispute on the issue of whether Mr. On-cale’s attendance at the crawfish bod hosted by Ray’s was in the general course arid scope of his employment with Arc. But there is no genuine issue of material fact relating to the general activity in which he was engaged at the time of the accident: the drive to demonstrate his automobile’s qualities. There is no evidence that Arc allowed him to attend the crawfish boil with the understanding that he was to use his personal automobile to promote good intercompany relations. ■ Mr. Oncale was not in any way seeking to advance his employer’s interests during the demonstration drive. He unilaterally decided to undertake the demonstration drive in his personal automobile, and that decision was, at most, merely incidental and not reasonably related to his purpose for being there. That activity was sufficiently removed both in purpose and location from the crawfish boil to constitute a substantial deviation from any employmentjrelated^ service, and it was the incidents inherent in that personal deviation that created additional risks and operated to produce the accident.
In short, we conclude on our de novo review that the additional risks of harm created by. the demonstration drive, particularly the excessive acceleration to demonstrate the automobile’s capabilities, were not inherent in Mr. Oncale’s employment and are not fairly attributable to Arc’s business. Accordingly, as Mr. Oncale was not in the course and scope of his employment, Arc cannot be held vicariously liable for his conduct and the trial court correctly concluded that Arc and Charter Oak were entitled to summary judgment.[2]
The judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiffs-appellants, Dustin Macaluso and Mindy L. Macaluso.
AFFIRMED.

. The plaintiffs' petition erroneously identified Arc’s liability insurer as Travelers Casualty and Surety Company.

. The plaintiffs originally alleged that Mr. On-cale was an insured under both his own personal policy and that issued by Charter Oak to Arc, but did not oppose the granting of summary judgment in favor of Charter Oak on the grounds that genuine dispute existed on the issue of whether Mr. Oncale was its insured. Similarly, they have not assigned any .error on the part of the trial court in that regard in this appeal. Because the plaintiffs did not raise that coverage issue in the trial court or in this court, we decline in our discretion to consider it.