HIGGINBOTHAM, J.
IsThis wrongful death action arises out of a helicopter crash that occurred in St. Mary Parish on January 19, 2012, killing both' men aboard, Lanny Ledet and Jason McKean. Mr. Ledet’s former wife, as tu-trix of their minor son, appealed the trial court’s grant of summary judgment in favor of Mr. McKean’s employer, finding that Mr. McKean was not in the course and scope of his employment at the time of the crash.
FACTS AND PROCEDURAL HISTORY
At the time of his death, Mr. Ledet, was the ranch manager at Golden Ranch Plantation, which included alligator farming as part of its business. On the day of the accident, Mr. Ledet and Arlen “Benny” Cenac, Jr., the principal of Cenac Marine Services, LLC (Cenac Marine) and owner of Golden Ranch, were planning to attend an alligator cooperative meeting in Plaque-mine, Louisiana. Paul Haines, Cenac Marine’s aviation manager, contacted Mr. McKean, who was the chief pilot for Chet Morrison Services, LLC, to see if he was available to make the flight to the meeting. Mr. McKean agreed. On the morning of the planned flight, Mr. Cenac woke up ill and told Mr. McKean and Mr. Ledet to go without him.
On January 19, 2012, sometime after 8:00 a.m., Mr. Ledet and Mr. McKean took off from Houma, Louisiana in a Robinson R44 helicopter owned by Cenac Marine. At approximately 9:00 a.m. on Belle Isle in St. Mary Parish, Louisiana, the helicopter crashed, killing both men instantly. Belle Isle is an approximately 4500 acre tract of land owned by Belle Isle, LLC, whose sole *91 member is Chester P. Morrison, principal of Chet Morrison Services, LLC. Belle Isle was used primarily for hunting and fishing by Mr. Morrison, his family, and his employees.
| ¿After the January 19 accident flight, plaintiff, Ms. Teri Ledet,[1] as parent and natural’tutrix of Blake John Ledét, filed a survival and wrongful death action against Robinson Helicopter Company, Cenac Marine, Mr. Cenac, three Chet Morrison companies,[2] and the Succession of Jason McKean. Plaintiff settled her claims against Cenac Marine, Mr. Cenac, and the Succession of Mr. McKean. Robinson Helicopter did not appear, leaving the Chet Morrison companies as the only defendant in the appeal.
In her amended petition, plaintiff alleged that Chet Morrison is vicariously liable under the doctrine of respondeat superior for the death of Mr. Ledet because Mr. McKean was negligent and was acting in the course and scope of his employment with Chet Morrison at the time of the accident.
In response, Chet Morrison filed a motion for summary judgment contending that Mr. McKean was not acting within the course, and scope of his employment with Chet Morrison at the time of the helicopter crash. Chet Morrison’s motion for summary judgment was heard on September 10, 2014, at which time the parties argued their respective positions. After the hearing, the trial court determined that no genuine issue of material fact remained as to whether Mr, McKean was in the course and scope" of his employment with Chet- Morrison at the time of the accident, and on' that day signed a judgment granting Chet Morrison’s motion for summary judgment and dismissing plaintiffs claims against Chet Morrison. It is from this judgment that plaintiff appeals.
LAW AND ANALYSIS
[1] When reviewing summary judgments, appellate courts conduct a de novo review of- the evidence, using the same criteria that' govern the trial court’s | ¡^determination of whether summary judgment is appropriate. Boudreaux v. Vankerkhove, 2007-2555 (La.App. 1st Cir.8/11/08), 993 So.2d 725, 729-30. The motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B)(2).[3]
On a motion for summary judgment, the initial burden' of proof is on the moving party. However, on issues for which' the moving party will not bear the burden of proof at trial, the moving party must only point but to the court thát there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Then the non-moving party must produce factual sup *92 port sufficient to satisfy its evidentiary burden of proof at trial. If the nonmoving party fails to do so, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ. P. art. 966(C)(2).
Circumstantial evidence may establish the existence of a genuine issue of material fact to defeat summary judgment; however, the response of the adverse party must set forth specific facts showing a genuine issue of fact exists. Garrison v. Old Man River Esplanade, L.L.C., 2013-0869 (La.App. 4th Cir.12/18/13), 133 So.3d 699, 703.. .Circumstantial evidence is evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred. Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 664-65 (La.1989). If circumstantial evidence is relied upon, that evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount ofj^certainty. This does not mean, however, that it must negate all other possible causes. Rando v. Anco Insulations Inc., 2008-1163 (La.5/22/09), 16 So.3d 1065, 1090.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. The Shaw Group v. Kulick, 2004-0697 (La.App. 1st Cir.4/8/05), 915 So.2d 796, 800, writ denied, 2005-1205 (La.11/28/05), 916 So.2d 148. The substantive law applicable in this case is based on the law regarding vicarious liability of employers, also known as the doctrine of respondeat superior. Louisiana Civil Code article 2320 provides that employers are answerable for the damage occasioned by their employees in the exercise of the functions in which they are employed. Henly v. Phillips Abita Lumber Co., 2006-1856 (La.App. 1st Cir.10/3/07), 971 So.2d 1104, 1112-13. Specifically, an employer is liable for its employee’s torts committed if, at the time, the employee was acting within the course and scope of his employment. Timmons v. Silman, 99-3264 (La.5/16/00), 761 So.2d 507, 510. The proper test in determining an employer’s vicarious liability thus consists of two elements: (1) course of employment, which refers to time and place; and (2) scope of employment, which examines the employment-related risk of injury. Richard v. Hall, 2003-1488 (La.4/23/04), 874 So.2d 131, 138.
An employee is acting within the course and scope of his employment when the employee’s action is of the kind that he is employed to perform, occurs substantially within the authorized limits' of time and space, and is activated at least in part by a purpose to serve his employer. Timmons, 761 So.2d at 510, citing Orgeron v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224, 226-27.
In favor of its motion for summary judgment, Chet Morrison noted that no one at Chet Morrison spoke to Mr. McKean about the January 19 accident flight, Chet Morrison did not pay for the flight, nor was Mr. McKean scheduled to fly for 17Chet Morrison that, day. Additionally, Chet Morrison pointed out that it was customary for Mr. McKean to fly people outside of the Chet Morrison businesses.
Conversely, plaintiff argues that the district court erred in granting summary judgment in favor of Chet Morrison because she avers that there are genuine issues of material fact regarding whether Mr. McKean was acting in the course and scope of his employment with Chet Morrison at the time of the helicopter crash. Plaintiff acknowledges that there is no direct evidence that Mr. McKean was flying for Chet Morrison during the January 19 *93 accident flight. However, she contends that there is sufficient circumstantial evidence that genuine issues of material fact remain regarding whether Mr. McKean was acting in the course and scope of his employment with Chet Morrison during the January 19 accident .flight. Plaintiff primarily relies on the circumstantial evidence that the helicopter was not near Plaquemine at the time of the accident but was flying over Belle Isle, which was Chet Morrison’s property used exclusively by Chet Morrison. She also points out that Chet Morrison paid a salary to Mr. McKe-an; Mr. McKean had flown Mr. Morrison to Belle Isle before; Chet Morrison businesses often leased the Robinson R44 helicopter from Cenac Marine; and a Chet Morrison policy regarding Mr. McKean getting permission to fly outside of the Chet Morrison businesses was not followed.
In favor of Chet Morrison’s motion for summary judgment and in plaintiffs opposition to the motion for summary judgment, both parties attached affidavits and partial depositions of several persons with knowledge regarding the January 19 accident flight and the businesses of Cenac Marine and Chet Morrison.
Mr. John DeBlieux, gave a deposition as Chet Morrison’s corporate representative. He said Mr. McKean was the chief pilot for Chet Morrison and was a salaried employee. Mr. McKean’s salary remained the same regardless of how many hours he was required to fly for Chet Morrison. Mr. McKean also acted as a|scontraet pilot for other companies when he was not flying for Chet Morrison. Mr. DeBlieux said Mr. McKean was permitted to fly as a contract pilot for other companies and was free to fly for pleasure. He testified that Mr. McKean was not scheduled to fly for Chet Morrison on the day of the accident. Further, he stated that “there were no conversations between anybody with Chet Morrison Contractors and Jason McKean on the day of the crash.”
Mr. DeBlieux discussed a Chet Morrison policy that said no pilot will be allowed to work outside of Chet' Morrison without prior written consent unless his outside work offsets Chet Morrison’s cost. Mr. DeBlieux acknowledged that provision, but. stated that Chet Morrison never followed that practice. Mr. DeBlieux • said Mr. McKean had flown him and Mr. Morrison in a helicopter to look at the property at Belle Isle.
In his deposition, Mr. Andre Broussard, Cenac Marine’s general counsel, acknowledged that the planned purpose of the flight was to attend an alligator cooperative meeting in Plaquemine, but said he knew “they ended up in the opposite direction at Bell[e] Isle. I have no idea what they were doing down there.” He said Chet Morrison did not pay for the January 19 flight, nor was Chet Morrison sent a bill for any expenses associated with the crash cleanup and debris removal. Mr. Broussard said Mr. McKean told him that he enjoyed flying to Belle Isle to sightsee because it was a beautiful place to fly-
Mr. Broussard testified that in October 2011, Mr. Morrison would not sign a defense and indemnification provision in a lease contract. Mr. Broussard stated that because that leasing arrangement would leave Cenac Marine without insurance if there was an accident under Cenac Marine’s policy, as of October 2011, Mr. McKean had Cenac Marine’s permission to fly the Robinson R44, but “not with Mr. Morrison and not pursuant to Chet Morrison business.” Mr. McKean had not flown the Robinson R44 for any Chet Morrison businesses since that time.
IflMr. Paul Haines, Cenac Marine’s aviation manager, in his deposition said that he *94 contacted Mr. McKean about making the flight with Mr. Ledet and Mr. Cenac and that Mr. McKean volunteered to do so. He said no payment to Mr. McKean was diseussed. He described a mutual casual business relationship between Cenac Marine and Chet Morrison, and said Chet Morrison also kept fixed wing aircraft at the hanger. Mr. Haines said that prior to October 2011, he had leased the Robinson R44 helicopter to Mr. Morrison through Mr. McKean for Mr. McKean to take Mr. Morrison to his camp at Belle Isle. Mr. Haines also testified that Cenac Marine allowed Mr. McKean to use the Robinson R44 helicopter for his own personal use, including building flight hours.
In Mr. Morrison’s affidavit, he attested that he never had any conversation with Mr. McKean about the January 19 accident flight and he had no knowledge of the purpose, route, or destination of the flight.
In opposition to the motion for summary judgment, plaintiff must produce factual support sufficient to satisfy her evidentiary burden of proving at trial that Mr. McKe-an was acting within the course and scope of his employment at the time of the January 19 accident flight by proving that Mr. McKean’s actions were activated at least in part by a purpose to serve his employer, Chet Morrison. Because plaintiff is relying solely on circumstantial evidence to prove Mr. McKean was acting in the course and scope of his employment, the evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount of certainty.
The planned purpose of the flight prior to Mr. Cenac’s illness was to go to a meeting in Plaquemine, but for reasons unknown to anyone who was deposed, Mr. Ledet, Golden Ranch’s employee, and Mr. McKean were at Belle Isle at the time of the crash. The January 19 accident flight was not discussed "with any person at Chet Morrison, Mr. McKean was not scheduled to fly for Chet Morrison, Mr. Morrison had no knowledge of the flight, Chet Morrison did not pay for the January 19 |1flaccident flight or fuel, and, as of October 2011, Mr. McKean had not been permitted to fly the Robinson R44 helicopter for Chet Morrison businesses. Further, it was not unusual for Mr. McKean to fly the Robinson R44 helicopter for reasons not in furtherance of Chet Morrison businesses, whether for other businesses, to build flight hours, or for pleasure. Additionally, Mr. McKean enjoyed flying at Belle Isle to sightsee.
After a thorough de novo review of the evidence, we conclude that the circumstantial evidence, taken as a whole in this case, fails to support that Mr. McKean was flying in furtherance of any Chet Morrison businesses. The fact that the accident occurred on the property of Mr. Morrison is not sufficient to establish the existence of a genuine issue of material fact. For these reasons, the trial court was correct in granting Chet Morrison’s motion for summary judgment. See La.Code Civ. P. art. 966(C)(2).
CONCLUSION
For the foregoing reasons, the summary judgment signed by the trial court on September 10, 2014 is affirmed. All costs of the appeal are assessed to plaintiff-appellant, Teri Ledet.
AFFIRMED.

. Ms. Teri Ledet and Mr. Lanny Ledet were divorced at the time of the January 19 accident flight.

. Chet Morrison Contractors, Inc., Chet Morrison Services, LLC, and Chet Morrison Contractors, LLC (Chet Morrison).

. Louisiana Code of Civil Procedure article 966 was amended and reenacted by Acts 2015, No. 422, § 1, .with an effective date of January 1, 2016. The amended version of article 966 does not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the Act; therefore, we refer to the former version of the article in this case. _ See Acts 2015, No. 422, §§ 2 and 3.